## HARPER v. KISSICK ET UX.

CONVEYANCE: FRAUD AND UNDUE INFLUENCE.

*Appeal from Mahaska District Court.*

WEDNESDAY, DECEMBER 3.

DAVID PETTITT died at Oskaloosa, Iowa, in the year 1866, leaving Rebecca Pettitt, his widow, and two daughters, Mary, aged about twenty years, and Helen, aged about sixteen years. Shortly after his death his widow, Rebecca Pettitt, was appointed administratrix of his estate. At the time of his death he owned in fee a homestead consisting of two city lots, with a large dwelling-house and appurtenances situated thereon. He also owned another lot upon which was a dwelling-house, and an undivided interest in a certain lot upon which there there were business rooms. The interest he thus owned was undivided, and shortly after his death a partition of the property was effected in such a manner that the heirs of his estate became tenants in common of the undivided half of twenty-nine feet of said lot, and one Bedell was the owner of the other half thereof. On the 8th day of November, 1868, the defendant, Robert Kissick, married the daughter Mary, and went into the family as a member thereof, without any agreement as to his living, boarding, and services. The mother was advanced in years and an invalid, and she and the two daughters continued to reside upon the homestead until the marriage of Kissick with the daughter Mary. After that all of said parties continued to reside there as one family until the death of Rebecca Pettitt, which occurred in January, 1874. After that the daughter Helen continued to reside at the homestead until November, 1874, when she married one Harper.

The affairs of the estate were in a confused condition at the time of the marriage of the daughter Mary, and her husband Kissick at once took the management of all the business of the estate. By his advice, the widow made a final report as administratrix in September, 1870, and receipts were executed by the two daughters and the widow for $1,084.13, as having been received by them from the estate. These receipts were not intended by the parties to be accurate statements of amounts received, but were intended to balance the amount of money with which it appeared the widow was properly chargeable. An order was made discharging the administratrix upon a showing that the debts were paid. This statement was not correct. There were still unpaid claims against the estate, but all of the heirs believed that their interest could be better subserved by making the settlement, and allowing Kissick to manage the estate, pay the debts, collect the claims and rents from the property.

In May, 1870, the widow conveyed all her interest in the propererty of the estate, and all the real estate therein belonging to her, to her two daughters, in consideration that they would support and maintain her during her life. Kissick became a party to the agreement for such support, and guaranteed the performance of the same.

On the 14th day of November, 1873, Helen Pettitt and Mary Kissick conveyed to said Robert Kissick the two homestead lots and the other lot with a dwelling-house thereon.

This action was commenced in February, 1875. The plaintiff, Helen Pettitt, now Harper, claims that she was induced to make the last named conveyance by reason of fraudulent representations of the defendants, to the effect that the said heirs were indebted to Kissick for a large amount of money paid by him, more than he had received from the estate, and also in a large amount for his services in managing said estate. She asks, that owing to said false representations and the peculiar relationship of the parties as members of the same family, the said conveyance be set aside, and that she be restored to her rights as an owner of an undivided half of said real estate so conveyed, and that an account be taken between herself and Kissick, and that she have such relief as she may be entitled to in equity.

The answer of defendants denied all fraud and averred that said conveyance was valid and made for a good and valuable consideration. A cross-claim was interposed against the plaintiff for boarding. There was a reply filed by the plaintiff and an amendment to her petition, and upon these issues the cause was referred to Hon William Loughridge, to state the account, find the facts, and report to the court. Upon the return of the report of the referee there was a decree entered for the plaintiff setting the said deed aside, and declaring it void, and decreeing the plaintiff to be the owner in fee of the undivided half of said real estate free from any claim of Robert Kissick. A judgment was also rendered against Kissick for $85.61, and the costs of the action. Defendants appeal.

*Lafferty & Johnson*, and *M. E. Cutts*, for appellants.

*Crookham & Gleason*, for appellee.

ROTHROCK, J.—1. Objection was made to the report of the referee in the court below upon the ground that he was not sworn as required by law. The objection is also urged in this court.

It appears from the record that the proper oath was administered to him on the 12th day of December, 1877, and that his report was filed three days afterwards. It is urged that there was not sufficient time between the taking of the oath, and the filing of the report for a proper consideration of the case. Upon the hearing of the motion to set aside the report, one of the counsel for appellee made an affidavit that he had administered the proper oath to the referee before he commenced the trial of the case, and that the same had been mislaid or lost.

Under these circumstances, we think there was no error in overruling the motion on this ground, especially in view of the fact that the case is here for trial anew upon the evidence.

II. The main question in the case, and indeed that upon which all other questions depend, is, was the conveyance made by the plaintiff to Kissick on the 14th day of November, 1873, valid, or was it procured by fraud? If valid, the only question to be considered is what is the state of accounts between the parties since that time? To determine the question as to the

validity of the deed of conveyance, we have given all the evidence a careful consideration, and have arrived at the conclusion that the referee and the court below correctly found that it should be declared void.

The evidence is undisputed that Robert Kissick, when he married, went into the family as a member thereof, and took the sole management of all the property of the estate. All of the other members of the family placed implicit confidence in his judgment, and every act which was done by him was acquiesced in by the others without question. At the time of his marriage he was a law student, without any property, as far as the evidence shows. Afterward he was one year, or nearly that time, in the law school at the University at Iowa City. For some time he was deputy collector of internal revenue, for which he received some compensation, but how much does not appear. He was also employed in a law office for a time, his compensation being $500 per year. During the time the parties resided together there were three children born to the defendants, two of whom are yet living. The defendant, in his testimony, states: "When I was married I went into the family and lived with them; we all lived together. The estate paid all the expenses of the household, and paid expenses of living out of the estate." No mention was made among the parties as to any compensation to be allowed the defendant for settling the estate, nor for collecting rents, or for any other service, until November, 1873, when the defendant made a claim of $3,000 for money advanced, and for his services in and about the settlement of the debts, and the management of the property. He further represented to the plaintiff that the estate was indebted in the sum of $1,700 to other parties, and plaintiff was advised by both the defendants to make the conveyance, that she might save the estate from being sacrificed to the payment of the debts.

That the conveyance was made in this belief upon the part of plaintiff we think can admit of no question. It is urged that the plaintiff acted understandingly, or rather that defendant gave her the option to devise some other means of paying the debts, and that he urged her to examine his books of account for herself. But we think every circumstance in the case shows that the parties did not deal on equal terms. It is a well recognized doctrine, one which we need not stop here to discuss nor demonstrate, that when it appears that a person rendering service is a member of the family served, either as a child, relative, or a visitor, a presumption arises that such service is gratuitous. *Scully v. Scully*, 28 Iowa, 548; *Rogers v. Millard*, 44 Iowa, 466. There is not a syllable of evidence in this case that any compensation was expected to be paid until the defendant presented the claim therefor, accompanied with a proposition for the conveyance, and the statement that unless something was done the property must be sacrificed. The defendant was not entitled to compensation. Surely he could make no just claim against his own wife for services under such circumstances, yet he took her conveyance as well as the conveyance of the plaintiff. This compensation, or claim for services, constituted a large part of the consideration for the deed. It was stated by the defendant as $1,000 for money advanced, and $2,000 for interest on money advanced and for services. How much of the $2,000 he claimed was for interest does not appear. He

represented the property conveyed to be of the value of $4,500. The referee found that the defendant had not, in fact, paid out any more money on account of the estate than he had received, and we think the finding was fully as favorable to the defendant as it should have been. It was also found that the property in controversy was, at the time of the conveyance, of the value of $5,600, and we think this finding is fully sustained by the evidence. The plaintiff was the owner of an undivided half of property worth $2,800, which she conveyed to the defendant, and the real consideration did not exceed $850, or half the debts as they were represented by the defendant. The consideration was, therefore, greatly inadequate. The plaintiff relied upon the defendant's statements and his opinions. She did not seek nor obtain the advice of any person outside the family; and, under the belief that, from the representations of the defendant, he would compel her to pay one-half of the claim of $3,000 which he then set up for money advanced and his services, and that if the proposition were not accepted her property would be sacrificed, she made the conveyance. Contracts between persons holding toward each other relations of trust and confidence, of the character which existed between these parties, are justly regarded in equity with suspicion, and where advantage has been taken of the weaker party the contract ought to be annulled. *Tucke v. Buchholz*, 43 Iowa, 415.

The referee and the court below adjusted the accounts between the parties for the rent of the business property collected by the defendant after the conveyance in controversy was made, and found there was due to the plaintiff the sum of $89, for which a judgment was entered against the defendant. This we believe to be correct from the evidence. No disposition was made of the question as to the value of the use and occupation of the homestead, and the rent of the other dwelling-house since the conveyance in controversy was made. The plaintiff has not appealed, and all that can properly be done in this court is to affirm the decree of the court below, setting aside the conveyance and investing the plaintiff with one-half of the real estate in controversy. The parties should, however, be placed, so far as possible, in *statu quo*, and each should be liable for one-half of the valid claims against the estate at the time the conveyance was made. If the defendant has collected rents of the dwelling-house other than the homestead, he should be charged therewith, and he should also be charged a reasonable rent for the homestead after the plaintiff ceased to be a member of the family. A further statement of account and adjustment seems to be necessary, and the cause will be remanded to the court below to make the same on the evidence already taken, and upon such additional evidence as may be produced.

In conclusion it is proper to say that we have not attempted to set out a statement of account between the parties at the time the conveyance was made, and thus demonstrate the substantial correctness of the finding of the referee, that the estate was not indebted to the defendant for money advanced from his own means. To do so would be utterly impracticable. The appellant's abstract contains over two hundred and fifty pages, most of which is closely printed matter. There is an additional abstract by the appellee. The correctness of this is disputed in an abstract in reply by

appellant. We have been, therefore, under the necessity of examining many of the original depositions of the witnesses. To undertake to vindicate our conclusions by a reference to the evidence in detail, and the items of account, would require a volume of no inconsiderable dimensions.

AFFIRMED.

SEEVERS, J., having been of counsel, took no part in the decision of this cause.