In re Estate of Bruce Pauly, Deceased.
Emory Plowman, Administrator, Appellant, v. Sarah E.
King, Appellee.

**WORK AND LABOR:** By Member of Family—When Compensation
1   **Recoverable.** Recovery may be had against the estate of an
infant for services and support rendered to the infant by a rela-
tive who was under no legal obligation to give them *when the
services and support were rendered under such circumstances as
fairly imply an understanding that the relative was to receive
compensation.*

**WORK AND LABOR:** By Member of Family—Recovery—Evidence.
2   Evidence reviewed, and *held* to justify the jury in finding that
services rendered by a grandmother to her grandchild were ren-
dered under circumstances implying an understanding that she
was to be compensated therefor.

**APPEAL AND ERROR:** Assignment of Errors—Sufficiency—Omni-
3   bus Assignments. Each assignment of error should be sufficient
in itself to disclose the particular proposition which appellant
desires to present. It follows that omnibus assignments will be
disregarded.

PRINCIPLE APPLIED: An assignment was: ''The court
erred in overruling appellant's motion for a new trial.'' This
motion involved *nine* different grounds, including exceptions (a)
to rulings on evidence, (b) to instructions, (c) to the denial of
a motion for a directed verdict, and (d) to the amount of the
verdict. *Held*, assignment not sufficiently specific.

**WORK AND LABOR:** By Member of Family—Value of Services—
4 • Evidence—Sufficiency. Evidence reviewed, and *held* to be suffi-
ciently definite to enable the jury, in their computation, to differ-
entiate between the value of the time for which plaintiff could
recover and the value of the time for which no recovery could
be had, under the ruling of the court.

**WITNESSES:** Competency—Value of Keep of Child—Opinion Evi-
5   dence. Men and women having experience in the care and rais-
ing of children in the neighborhood in question are competent
witnesses to testify to the value of services and support rendered
to a child.

**EVIDENCE:** Opinion Evidence—Care of Children—Value. Those
6   having experience in the care and raising of children in the

neighborhood in question may give their opinion as to the value of services and support rendered to a child.

INFANTS: Necessaries—Liability—Estate of Infant. The estate of 7 an infant is liable for necessaries furnished the infant, especially where the parent failed to furnish them.

INFANTS: Necessaries—Care and Support. Care and support in the 8 helplessness of extreme youth are necessaries.

*Appeal from Van Buren District Court.*—D. M. ANDERSON, Judge.

.SATURDAY, FEBRUARY 12, 1916.

The opinion sufficiently states the case.—*Affirmed.*

*John F. Webber* and *W. A. Work,* for appellant.

*H. C. Taylor, Walker & McBeth,* for appellee.

WEAVER, J.—James F. King and his wife, Sarah E. King, were the parents of one child, a daughter, Lettie F. King. The daughter married one Henry Pauly, and of that marriage, one child, Bruce K. Pauly, was born. Within ten days after the birth of this child, its mother died, and her body was brought to the home of her parents at Milton, Iowa, for burial. The babe was at the same time brought to the home of its grandparents, and thenceforward remained in that home until its death, 12 years later. The circumstances under which the grandparents received and thereafter kept the child are the subject of dispute, as will be hereafter mentioned more particularly. The father, Henry Pauly, returned to his home or place of residence in another state, and thereafter, with a single interval of a few months, did not again take up his residence in Iowa. He is now, and for a considerable period has been, a resident of Chicago, Illinois. He has married again and maintains a home of his own. During the lifetime of the child, its father visited him occasionally but not frequently. On one occasion, he sent the grandmother $8 with which to buy a baby carriage, and at another time, he paid for a suit of clothes and a pair of shoes

for the boy. Other gifts or contributions by him were of merely nominal value. After the marriage of his daughter to Pauly, and before her death, James F. King made a will, by which he bequeathed to his wife all his personal estate of every kind, and in addition thereto devised to her a life estate in about 60 acres of land owned by him in Davis County, Iowa, and another tract of 60 acres in Scotland County, Missouri, with remainder therein for life to his daughter, Lettie F. Pauly, and remainder over in fee "to be, vested in the rights of her offspring equally". In the year 1905, the testator died, and the will above mentioned was duly admitted to probate. Under this will, the child, Bruce K. Pauly, became vested with a fee in the lands described, subject to the life estate of his grandmother, and, upon his dying intestate, the title acquired by him under the grandfather's will passed to his father, Henry Pauly. An administrator of the boy's estate having been appointed, the grandmother, Sarah E. King, filed a claim against his estate for his keeping and for care bestowed and services rendered for the 12 years or more in which she had him in her charge, in the sum of $7,680. The administrator denied the claim. The issue was tried to a jury, which rendered a verdict in the grandmother's favor for $3,250. The administrator's motion for a new trial was denied, and an appeal has been taken. It may be remarked at this point that the case appears to be incorrectly entitled, the proper order of the parties being reversed; but, as the entire record seems to have been made up in this manner, we adopt the caption made use of by the parties.

I. The appellant's first proposition, fortified by a very liberal citation of authorities, is that, without a contract, express or implied, the law presumes that services and support of the character for which appellee claims compensation were rendered as a matter of family regard, love and affection, and create no obligation on the part of the beneficiary to make payment therefor. That such is the

1. WORK AND LABOR: by member of family: when compensation recoverable.

general rule, there can be no doubt; but it is equally true that there is no conclusive presumption to that effect, unless it be in favor of the infant child in the home of its parent, and if the child be admitted to the home or family of one charged with no legal duty for its support, under circumstances justifying the inference that compensation is intended and expected, then the law will imply an obligation to pay the reasonable value of the services so rendered. This rule is expressly recognized in all the cases cited by appellant, and in many of them, recoveries of this character have been sustained. The rule which prevails in some jurisdictions, that recovery cannot be had in such cases without proof of an express contract to pay therefor, does not prevail in this state. Generally speaking, proof that one claiming payment for such service was at the time a member of the same household with the person against whom it is asserted, does no more than to remove the presumption ordinarily obtaining that valuable service performed by one for another is rendered with view to compensation, and leaves the question to be decided upon all the facts, including that of relationship, without the aid of any presumption of contract. The rule as stated by the Virginia court is that:

"In the absence of direct proof of any express contract, the question always is, Can it be reasonably inferred that pecuniary compensation was in the view of the parties at the time the services were rendered? and the solution of that question depends on a consideration of all the circumstances of the case, the relationship of the parties being one of these circumstances." *Harshberger v. Alger*, 31 Gratt. (Va.) 52; *Stansbury v. Stansbury's Administrators*, 20 W. Va. 23.

It has also been held that proof of family relationship creates no presumption against the claimant aside from the ordinary burden of proof, but leaves his right to compensation to be determined as a question of fact from the peculiar circumstances and conditions existing in each case, and that, if there is any presumption in a given case that the services

were gratuitous, it is clearly a presumption of fact, and not of law. *Saunders v. Saunders,* 90 Me. 284. Other cases assume the rule to be that proof of the family relationship raises a presumption that the services were rendered gratuitously; but even when stated in this manner, it would seem to do no more than to cast upon the claimant the burden not only of proving the performance of the alleged service, but also of showing facts from which the expectation or promise of compensation may be inferred. It is to be admitted that, while there is no wide difference in the rule recognized by all courts which do not hold rigidly to the doctrine that recovery in such cases can be had only upon proof of express contract, there has been much difference in the liberality with which that rule has been applied. This court, we think, has gone to neither extreme and, while admitting the right to recover upon claims of apparent merit fairly supported by the evidence, has refused to open a door through which the estates of deceased persons may be raided for the satisfaction of demands having no substantial foundation.

2. WORK AND LABOR: by member of family: recovery: evidence. The question then arises upon the record before us whether there is any evidence upon which the jury could properly find for the appellee. Of that we think there can be no doubt. The law requires us to give the evidence the most favorable construction it will reasonably bear in support of the verdict. The evidence fairly tends to show that the father of this motherless infant brought it when but 10 days old to the home of the appellee. He had no home of his own suitable for its keeping. The heart of the grandmother naturally opened for the reception of the helpless child into her care; but, whether from a distrust of the son-in-law or from a desire to be protected in her right to the possession of the child should she take him into her family, she offered to take and keep him as her own, provided the father would execute papers of adoption to her, or, as she expressed it, "give her a deed" to the child. This he declined to do, but went away

leaving the child in appellee's possession for the time being, apparently without any definite understanding as to the period or terms of its stay there. Some 30 days later, he returned to the appellee, and, according to a witness who was present, he said, "I don't know what I am going to do with Bruce. I can't find anybody that will keep him. I guess that I will have to leave him here." Then, appellee having again said that she did not want to keep him unless Henry (the father) "would give him to her—adopt him", he answered that "he would leave the child there and make it right with her for the time he was there." Thereafter, the record does not seem to disclose any specific conversation or understanding between the father and appellee concerning the precise nature of appellee's custody of the child. After the first year, the visits of the parent became fewer, and it is perhaps not strange that parent and child grew apart and the ties between them became more nominal than actual. When the lad was about to die, the father came and remained until after the death and burial. Later, he, for a time, declined to pay the undertaker's bill, claiming that appellee ought to pay it or had said that she would pay it; but after some time he did pay it, or the principal part of it. Whether at the time of this episode he knew that the boy had died possessed of an estate of which he was himself the heir does not appear. It is true that he denies much of the conversations and statements ascribed to him by the appellee and her witnesses concerning the conditions under which the child was left in the care of the latter, and in some of his denials he has more or less corroboration. But the veracity of the witnesses and the weight and value of their testimony were matters for the jury alone, and the verdict indicates a finding that the preponderance of the credible evidence is with the appellee. That finding the court must accept as final. The effect of the verdict, taken in connection with the instructions given by the court to the jury, is to sustain appellee's contention, and to find that the infant was left by the

father in her care under circumstances implying an under-
standing that she was to be compensated for her services.
It is no doubt true that appellee wanted the child, that she
loved it, not only for its own sake, but for the sake of her
dead daughter, and that if it were necessary in order to have
and keep him she would readily have foregone all thought
of compensation; but these facts are not necessarily incon-
sistent with the jury's finding that she did not so receive
him.

II. Appellant further assigns error as follows: "The
court erred in overruling appellant's motion for a new trial."
The motion for new trial is based upon nine distinct grounds,
including exceptions to rulings on the admis-
sion of evidence; to instructions to the jury;
to the denial of a motion for directed ver-
dict; and to the amount of the verdict. While
formal assignments of error are no longer
required, it remains true that an appeal in a law action
brings the case to this court for no other purpose than the
consideration of errors which the appellant alleges appear
in the record of the proceedings below; and, unless such
errors are in some manner pointed out and argued, there is
nothing presented for our consideration. By Section 53 of
our rules, it is required that, if counsel desires the court to
pass upon any particular questions, he shall state in separate
numbered propositions each error relied upon, with a brief
and concise statement of facts presenting the alleged errors
and exceptions. A single general sweeping assignment of
error, including numerous rulings and exceptions, has always
been held too vague and general to present any proposition
for our decision. *Skeels v. Porter*, 165 Iowa 255; *Jones v.
General Construction Co.*, 150 Iowa 194; *Boeck v. Modern
Woodmen of A.*, 162 Iowa 159, 160; *Dale v. Colfax Consoli-
dated Coal Co.*, 131 Iowa 67, 74. We have, however, examined
the record as to the motion for new trial, and, in so far as the
grounds thereof are stated with particularity, they are, with

3. APPEAL AND ERROR: as-
signment of errors: suffi-
ciency: omni-
bus assign-
ments.

perhaps one exception, governed by our conclusions already announced, and no error was committed in denying a new trial thereon.

The one question upon which further comment is proper arises as follows: It appears that James F. King, husband of the appellee, died some four years after the young child was left with its grandparents, and, upon objection raised by the appellant, the trial court ruled that the appellee could not recover for the keeping and care given the child while her husband lived, and that her recovery, if any, should be confined to the time between the death of Mr. King and the death of the child, some eight years later. This ruling appears to have been made after appellee's evidence was introduced, and appellant now makes the point that the evidence of the reasonable value of the service rendered was directed to the entire time that the child was in appellee's home, including the four years above mentioned, and that there is nothing in the record upon which the jury could assess or estimate such value for the eight-year period. But this objection cannot be sustained. An examination of the record shows that most of the witnesses gave their estimate on the basis of compensation by the week or month or year, and we think it clearly sufficient to sustain the verdict. It is perhaps a fair question whether, if the right of recovery for the first four years was in James F. King, such right did not pass to the appellee under the terms of her husband's will; but, as she has not appealed, the ruling of the trial court with respect thereto is final. Again, it is said that none of the persons testifying to the value of appellee's services were competent witnesses. The objection is without merit. As a rule, the witnesses were men and women having experience in the care and raising of children. None, per-

4. WORK AND LABOR: by member of family: value of services: evidence: sufficiency.

5. WITNESSES: competency: value of keep of child: opinion evidence.

haps, had rendered such service under circumstances in all respects parallel to those of the present case. Nor was such experience required to qualify them to speak. Such circumstances are too infrequent to establish anything which may be called customary or prevailing prices or values, and just compensation therein can be estimated only by reference to the common experience and observation of those who have performed services and borne expenses of an analogous character. Parents and heads of families and other persons in the same general neighborhood to whom the care and keeping of children have been committed are presumably competent to testify concerning the reasonable value of their care and keeping.

6. EVIDENCE: opinion evidence: care of children: value.

III. It is further argued that the verdict is clearly excessive. An examination of the record at this point discloses that the evidence on the part of appellee would have justified the recovery of a materially greater amount than was found by the jury. It cannot, therefore, be said that the verdict in this respect is without support. Neither is it so great that we can say that it was manifestly the product of passion or prejudice.

IV. That the estate of the minor may be held for the reasonable and necessary expense of its care and support by one not standing *in loco parentis* is not seriously questioned, nor indeed can it be. And this is especially true where the parent or guardian neglects or fails to perform his duty in this respect. *Call v. Ward*, 4 Watts & Ser. (Pa.) 118; *Mills v. St. John*, 2 Root. (Conn.) 188; *Andrews v. Chicago G. W. R. Co.*, 129 Iowa 162. It is a general rule, both of statute and common law, that an infant is liable for necessaries furnished him; and assuredly, care and support in the helplessness of extreme youth, when those legally bound therefor fail to render them, are necessaries. *Trainer*

7. INFANTS: necessaries: liability: estate of infant.

8. INFANTS: necessaries: care and support.

*v. Trumbull*, (Mass.) 6 N. E. 761; Section 3189, Code, 1897. The principal exception to the rule is, of course, where the infant is taken, supported and cared for as a member of the family, without proof of other facts or circumstances from which the right to compensation may fairly be implied. Whether, under the facts in this case, the support and service rendered by the appellee were intended to be gratuitous as a mere matter of love or duty, or were rendered under circumstances giving rise to an implied obligation on the part of the child or its father to pay therefor, was, as we have held, a question for the jury, which has been answered by a verdict against the appellant's contention.

In conclusion, counsel say, with some asperity, that "if Bruce Pauly were living today, Mrs. King would not be in court asking compensation for her services to him; and only now after he is dead, under the attrition of the hard and grinding selfishness of the world as the years have gone by in which the earlier impulses of love and tenderness for this child have been supplanted, is she in court asking for mere money compensation". As a pure abstraction, this protest against the "hard and grinding selfishness" of our humankind must command the concurrence of all right-thinking people; but we must confess that it seems to lose much of its point and force when brought forward in aid of the claim of a father to take to himself the entire estate of a deceased child, without compensation or thanks to the woman upon whom he shifted the burden of nursing, care and support from the hour of its birth to the end of its life.

The case appears to have been fairly tried, and the instructions of the court were, to say the least, as favorable to the defendant as he had the right to demand. No error prejudicial to the appellant appears, and the judgment below is therefore—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.