EMMA C. PETERSON, Executrix, Appellant, v. CARL E. JOHNSON, Administrator, Appellee.

FEBRUARY 8, 1927.

REHEARING DENIED JANUARY 13, 1928.

*Seerley & Clark,* for appellant.

*La Monte Cowles,* for appellee.

STEVENS, J.—Charles Johnson, who died intestate in May,

1923, and John A. Peterson, who died testate April 24, 1925, were cousins, who came to this country when young men, and located in Des Moines County. Peterson took up his residence in Burlington, and Johnson upon a farm near that city. Both married, and reared families. The two men sustained close and intimate personal and social relations during all of the years preceding the death of Johnson, and their families frequently visited each other until 1906, when Mrs. Johnson died. Following this event, Johnson appears to have spent much more time at the Peterson home, receiving meals, lodging, and care, for which payment was neither demanded by Peterson nor tendered by Johnson.

Carl E. Johnson, appellee, was appointed administrator of the estate of his father, Charles J., June 12, 1923. On or about December 3, 1924, Peterson filed a claim against Johnson's estate for $1,700 for lodging, board, and care for 17 years. Before the claim was tried, Peterson died, and Emma C. Peterson, his surviving widow, was appointed executrix of his estate.

The pleadings filed, in addition to the claim of appellant, which, as therein stated, was for ''lodging and care furnished the said decedent for the 17 years preceding his death, at $100 per year,—$1,700,'' consisted of the answer of appellee, which admitted that he was the duly and legally appointed administrator of the estate of Charles J. Johnson, and alleged that the claim filed against said estate was barred, under the provisions of Section 11972 of the Code of 1924, and the reply of appellant, setting up peculiar circumstances excusing the failure to file the claim within twelve months after due notice was published by the administrator of his appointment, and of facts and circumstances claimed to entitle her to equitable relief. Neither party in any way challenged the pleadings filed by the other, and the cause was tried to a jury upon the issue stated, the trial resulting in a verdict in favor of the defendant.

Misdirection of the jury in three important particulars presents the principal propositions relied upon for reversal. These propositions will be first given consideration.

I. Section 11890 of the Code of 1924 requires executors and administrators, within ten days after the receipt of letters of administration, to publish such notice of their appointment

 as the court or clerk may direct, which direction shall be indorsed on the letters when issued, and entered of record in the probate docket. One of the principal contentions of appellant is that the notice required by the foregoing statute was not published, and that, if notices were posted, the proof required by statute of such posting was not made, or filed in the clerk's office. The court instructed the jury that the publication of the required notice was established by the undisputed evidence. Appellant maintains that this instruction is erroneous, and that the question should have been submitted to the jury. It appears from the evidence that due and proper instructions were indorsed by the clerk on the letters of administration, and entered of record on the probate docket; that the required number of blank notices were given to the administrator, and that all were posted, as required by the directions of the clerk, except appellant alleges that there was a failure to properly post a notice at the front door of the courthouse. The administrator admitted that he did not place a copy thereof in the case provided for that purpose and maintained near the front door of the courthouse, but testified that he posted the same by pinning or otherwise attaching it to the frame of the door of the case. Proof of posting was not filed until September 18, 1925. This was not in accordance with the statute, which requires that the same be filed within six months after publication. Section 11350, Code of 1924. Several witnesses testified to seeing notices posted in various places, but no one appears to have ever observed a notice at the front door of the courthouse. Except for this fact, the testimony of the administrator was practically undisputed. The court admitted the proof of posting filed September 18, 1925, in evidence over the objection of appellant. Error is assigned on this ruling. Whether it was admissible or not, we think it clear that its receipt was without prejudice. Parol evidence was admissible to prove that notices were posted, as directed. The return on the exhibit in question went no further than the oral testimony of the administrator. It is possible that the notice which the administrator claims was posted at the front door of the courthouse was not securely posted, and that it soon became displaced. The administrator testified that the door of the case was locked, and he could not

get it open. A finding by the jury, if the question had been submitted, that proper notices were not posted, could not have been permitted to stand. The testimony of the administrator was disputed only by remote circumstances of little probative value. The sheriff and a deputy clerk testified that, although they frequently went in and out of the front entrance to the courthouse, they did not see the notice posted on the outside of the case. Those accustomed to seeing notices in the case might not have had their attention called to a notice attached to the outside, but they were likely not to have observed the notice at all, if it had been properly posted. We think the proof of the publication of notice is practically undisputed, and that the peremptory instruction was not erroneous.

II. It is provided by Section 11972 of the Code of 1924 that claims of the fourth class—that is, all claims filed more than six months after the publication or posting of notices  by executors or administrators of their appointment—will be barred in one year, unless peculiar circumstances are shown, entitling the claimant to equitable relief. Under the repeated holding of this court, equitable relief in such cases must be granted by the court. In hearing and passing upon the peculiar circumstances, the court applies equitable rules, and the relief granted is, in the language of the statute, equitable in its nature. *McCormack v. Cook,* 11 Iowa 267; *Brewster v. Kendrick,* 17 Iowa 479; *Johnston v. Johnston,* 36 Iowa 608; *Boyle v. Boyle,* 126 Iowa 167; *Schlutter v. Dahling,* 100 Iowa 515; *Roaf v. Knight,* 77 Iowa 506; *Bentley & Olmsted v. Starr,* 123 Iowa 657; *Mosher v. Goodale,* 129 Iowa 719; *Lamm v. Sooy,* 79 Iowa 593; *Nichols v. Harsh,* 202 Iowa 117.

The court, however, in this case submitted this issue to the jury. We have already called attention to the pleadings filed herein. No peculiar facts or circumstances entitling the claimant to equitable relief are alleged in the claim filed. The only reference thereto in any of the pleadings is in appellant's reply. The circumstances therein alleged are as follows:

"The said John A. Peterson was an invalid during the four years preceding his death, in May, 1925, and was unable to attend to business during the time of the running of the

statute, and did not recover sufficiently to attend to such business until about the time the claim was filed.''

After a jury had been impaneled, appellee objected to the introduction of any testimony, for the reason that the claim was not filed within the time required by statute; that no equitable circumstances were alleged in the pleadings; and that the claim was barred by the statute of limitations. The objection was overruled.

At the conclusion of plaintiff's case, the defendant moved the court, for a directed verdict, upon the grounds stated in the objection just referred to. This motion was overruled, was  renewed at the close of the testimony, and again overruled. Appellant did, however, at the conclusion of the evidence, move the court to withdraw from the jury all questions concerning the bar of the statute of limitations for the reason that notices had not been published as required by the statute and the directions of the clerk. By an amendment to the answer, appellee also set up the general statute of limitations. Appellant introduced testimony tending to show that Peterson was ill for something like four years preceding his death; that he was much weakened by disease; and that he was, to some extent at least, disqualified to do business. Appellee attempted to meet this testimony by showing that his illness had not seriously incapacitated him to attend to ordinary business. So far as the record shows, appellant at no time suggested to or asked the court to determine the facts and grant her equitable relief. The case was tried and submitted upon the theory that the issues as to the publication of notice and the circumstances excusing the delay in filing the claim were triable to the jury. We deem it not improper, in this connection, to say that, in our opinion, the showing made was insufficient to entitle claimant to equitable relief. The preponderance of the evidence is to the effect that, notwithstanding the illness of Peterson, he did transact business no more difficult than the preparation and filing of a claim after Johnson's death.

But it is further contended by counsel that, if the issue in question should have been submitted to the jury, then the instructions submitting same are erroneous. We shall not set them out. We have carefully examined and considered them

in the light of the exceptions urged. Taken as a whole, they fairly submit the issue to the jury.

The court instructed the jury that it was claimant's duty to exercise ordinary care and diligence in filing the claim, and that, if the failure to file same was due to the want of ordinary diligence and attention, then the circumstances were not such as to excuse delay. The jury were, however, quite clearly informed that, if the failure to file the said claim within twelve months was due to peculiar conditions and circumstances sufficient to excuse the delay, the claim was not barred. The instruction could have been somewhat more definite at this point, but when the several paragraphs dealing with the subject are considered together, they are sufficiently specific, and the jury could not have been misled thereby.

III. The jury were instructed that the evidence without dispute showed that Johnson and Peterson were distant blood relatives; that, during the entire period of their acquaintance,  and after they moved to Burlington, they maintained mutually friendly and social relations of a cordial and intimate character; that they, with their families, visited each other at frequent intervals, and that they otherwise manifested the close relationship between them; and that, because of these long intimate personal relations, the burden was upon appellant to show by a fair preponderance of the evidence that the services and accommodations rendered were rendered with the intention on the part of Peterson to receive and accept compensation therefor, and upon the part of Johnson to receive and pay therefor.

It is the contention of appellant that the instruction as to the burden of proof is erroneous; that the rule stated applies only to controversies between members of a family; that the services rendered by Peterson were valuable, and were accepted by Johnson; that the law, under such circumstances, implies an obligation to pay therefor; and that the burden of proof at this point was on the administrator, and not on the claimant.

The evidence shows that, after the death of his wife, Johnson was indeed a frequent visitor at the Peterson home, where he was treated kindly, receiving board, lodging, and other comforts. The visits of the Petersons to the Johnson home were less frequent after the death of Mrs. Johnson, but there was

no abatement in the cordiality of their relationship. Peterson, apparently, never at any time requested Johnson to pay for the accommodations and services rendered. The evidence does tend, however, to show that Johnson, on one or more occasions, expressed his appreciation of the kindness shown him, and stated, in effect, that he intended sometime to make it right. The testimony of Mrs. Peterson on this point is as follows:

"I have heard Mr. Johnson talking with my father at various times, in which I took no part. He often told my father that he would like to come into our place and stay. It was a second home to him, and he says, 'In time, John, if you live after I do, I will see that you are well paid for what you have done for me.' And he also said, 'I never come in here but what I am welcome.' He also told my father, 'Well, John, now I have got it fixed just the way I want it.' My father asked him what he meant, and he says, 'Well, I have got it fixed now, if you live after I do, you will get a pension then.' My father says, 'If you do that, it will be the first time anybody has given me any money.'"

No books were kept by either party, and none of the witnesses for appellant were able to state the number of weeks Johnson spent at the Peterson home in any one year during the long period covered by the claim. The estimates given by them were based upon recollection only, and could not have been, at best, more than approximately correct. Nevertheless, the law is well settled in this state that, where one renders valuable services to another who accepts the same, and who is not a member of the same family, an obligation to pay therefor will be implied. If the services are rendered by a member of the family, the opposite rule applies, and the presumption arises that the services were gratuitous. *Harlan v. Emery,* 46 Iowa 538; *Wence v. Wykoff,* 52 Iowa 644; *Graham v. McKinney,* 147 Iowa 164; *In re Estate of Pauly,* 174 Iowa 122; *Snyder v. Nixon,* 188 Iowa 779; *In re Estate of Frederickson,* 191 Iowa 315; *Snyder v. Guthrie,* 193 Iowa 624; *Herrick v. Hayes* (Iowa), 173 N. W. 110 (not officially reported); 2 Elliott on Contracts, Section 1363 *et seq.* It follows that the court erroneously placed the burden upon the appellant to establish a contract. It is, of course, proper under such circumstances for the defendant to plead and prove the relationship of the parties and all the

facts pertaining to the transaction, by way of defense. Frequently, the presumption may be easily overcome, but the burden is as we have stated. The Iowa authorities cited by counsel for appellee, as follows, do not conflict with this rule: *Danes v. Slitor*, 118 Iowa 81; *Tank v. Rohweder*, 98 Iowa 154; *Allen v. Bryson*, 67 Iowa 591; *Scully v. Scully's Executor*, 28 Iowa 548; *Smith v. Johnson*, 45 Iowa 308; *Rogers v. Millard*, 44 Iowa 466; *Harper v. Kissick*, 52 Iowa 733; *McGarvy v. Roods*, 73 Iowa 363; *Seddon v. Richardson*, 200 Iowa 763; 1 Jones Commentaries on Evidence (1913) 277.

IV. Appellee, as stated, pleaded that the claim filed was barred by the statute of limitations. The court instructed the jury on this point that, if the evidence showed that the alleged  services were continuous from year to year, without interruption, the account should be treated as current and open, but that, if the proof was insufficient as to any item or items of the claim, so as to interrupt the continuity of the account from year to year, the interruption would be a bar to the allowance of any part of the claim accruing prior thereto, provided the same related to a time more than five years prior to the filing thereof.

It is argued by counsel that the foregoing instruction should not have been given, as there was no evidence of any interruption of the services. There was no direct evidence of any interruption in the rendition of services, but the account was established by evidence more or less uncertain and indefinite. The giving of the instruction was not, we think, erroneous; but, in view of the conclusion reached by the jury, it could not well have been prejudicial, if it were erroneous. The deputy clerk of the district court was permitted, over the objections of the appellant, to testify to the custom of that office to make out notices for executors or administrators to post, and to direct them to post some of them in the township in which the person died, together with one at the door of the courthouse, and to make prompt return of such posting. It may be conceded that the custom of the clerk's office in this particular was immaterial. The admission of the evidence, however, was without prejudice, as the preparation and delivery of notices and the

posting thereof in this case were clearly established by direct proof.

We have not discussed every point made by counsel, nor have we specifically referred to each particular in which error in the instruction is suggested. We have, however, noted and given careful consideration thereto. For the error pointed out, the judgment is reversed.—*Reversed.*

EVANS, C. J., and FAVILLE and VERMILION, JJ., concur.