ARTIFICIAL ICE COMPANY, Appellant, v. RECIPROCAL EXCHANGE, Appellee.

**INSURANCE:** Cancellation—Strict Compliance. A peremptory notice
1   by an insurer of the instant cancellation of a policy, without more, is nugatory, when the policy explicitly provides that cancellation shall be had only (1) on five days' notice, and (2) on a notice which states that the unearned premium, when ascertained, will be returned.

**INSURANCE:** Cancellation—Waiver of Insufficient Notice. The right
2   of an insured to notice of cancellation in *strict* accord with the policy is not waived, nor does the insured impliedly consent to the instant cancellation of the policy, because of the fact that the insured, upon receiving an *insufficient* notice of cancellation, and being uncertain as to the legal effect thereof, and having the right under the policy to take out additional insurance, did take out additional insurance in other companies, *to replace that which the insufficient notice sought to cancel.*

**INSURANCE:** Payment of Loss—Double Recovery. The payment in
3   full by several co-insurers of a fire loss under an agreement with the insured that, if the latter recovered against another co-insurer who was denying liability, he (the insured) would reimburse the co-insurers for excess payment, does not constitute a recovery in such sense as to prevent the insured from maintaining an action against the delinquent company.

*Appeal from Woodbury District Court.*—C. C. HAMILTON,
Judge.

OCTOBER 25, 1921.

REHEARING DENIED JANUARY 17, 1922.

ACTION at law, to recover upon policies of insurance. There
was a trial to the court without a jury. Judgment for the de-
fendant, and plaintiff appeals.—*Reversed.*

*Sears, Snyder & Glysteen, Vail E. Purdy,* and *H. C. Harper,*
for appellant.

*Henderson, Fribourg & Hatfield* and *D. V. Howell,* for
appellee.

WEAVER, J.—The plaintiff is the owner of an extensive ice
plant at Sioux City, Iowa. The Reciprocal Exchange, named as
defendant herein, is a voluntary association of insurers, organ-
ized under the terms of Chapter 180, Acts of the
Thirty-seventh General Assembly of Iowa. On
June 30th, defendant issued its policy of insur-
ance to the plaintiff on said ice plant and property for the sum
of $11,000, for the term of one year from said date. Later,
on July 31, 1918, defendant issued to plaintiff another policy
of like character upon the same property for $13,000, for the
term of one year from that date. Each policy contained a pro-
vision reading as follows:

1. INSURANCE: cancellation: strict compliance.

"In consideration of the acceptance by the insured of a
reduction in premiums from the established rate of .... per
cent to 1.1222 per cent, it is agreed that the insured shall main-
tain insurance during the life of this policy upon the property
insured to the extent of at least ninety per cent of the actual
cash value thereof at the time of the loss and that failing to do
so the insured shall be a co-insurer to the extent of such deficit."

Each policy also contained another clause, as follows:

"Cancellation of Policy. This policy shall be canceled at
any time at the request of the insured, in which case one fourth
of the deposit may be retained by the attorney for the expense
of making this contract, and the unused portion of the paid de-
posit, when ascertained, shall, upon demand and surrender of

this policy, or last renewal, be returned to the insured. This policy may be canceled at any time by the attorney by giving to the insured a five days' written notice of cancellation with or without tender of the unused paid deposit, which unused paid deposit, if not tendered, shall when ascertained, be refunded on demand. Notice of cancellation shall state that said unused paid deposit (if not tendered) will, when ascertained, be re funded on demand.''

In addition to this insurance, plaintiff was carrying policies in several other companies. A fire occurred on October 17, 1918, injuring or destroying the insured property to the extent of $30,443.77, and this action was begun by plaintiff to recover the amount or proportion of such loss or damage which is alleged to be properly chargeable to defendant.

Defendant does not deny the issuance of the policies, but rests its defense upon the proposition that such insurance had been canceled before the loss occurred. In support of its plea of cancellation of the policies, the defendant produced evidence substantially as follows: After the issuance of these policies, and prior to September 11, 1918, a representative of the defendant company visited Sioux City and, after inspection of the insured property, advised or recommended certain changes or improvements, to decrease the fire hazard; and upon his report, defendant requested or demanded that the specified improvements be made. This not meeting with a satisfactory response, the following correspondence ensued. Under date last named, defendant wrote plaintiff as follows:

''Artificial Ice Company,
    ''Sioux City, Iowa.
''Gentlemen:
    ''We are still holding our files open for reply to our letter regarding the fire extinguishing facilities in your plant. Kindly let us have a reply on the bottom of this sheet, and oblige,
                    ''Yours very truly,
                    ''Bruce Dodson, Manager.''

On September 30, 1918, plaintiff returned said letter to the defendant, writing or indorsing thereon its answer, as follows:

"We have decided to add no equipment or changes to our plant at the present time.

"Artificial Ice Co.

"[Sgd.]　J. E. Hathaway, Pres.

"If this does not meet your approval let us know so we can replace our insurance."

Thereafter, under date of October 8, 1918, defendant addressed a letter to the plaintiff as follows:

"Artificial Ice Company,
　"Sioux City, Iowa.
"Gentlemen:
　"This is notice of the cancellation of the following policies, according to their terms and this notice; Policy No. 73932 covering $11,000 written to expire June 30th. Policy No. 74292 covering $13,000 written to expire July 31st. We regret the necessity of this action, but inasmuch as your plant was not found in satisfactory physical condition, and you decline to make necessary improvements, our action as indicated above becomes imperative.

"Very truly yours,

"Bruce Dodson, Manager."

While this letter is dated October 8, 1918, it is shown quite conclusively, and the trial court finds, that it was not mailed until October 15th and was received by plaintiff on October 16, 1918. On October 15th, defendant wrote another letter, as follows:

"Artificial Ice Company,
　"Sioux City, Iowa.
"Gentlemen:
　"In order that there may be no misunderstanding, we beg to confirm our letter of October 8th that Policy No. 73932 for $11,000 insurance written to expire June 30, 1919, and Policy No. 74292 for $13,000, written to expire July 31, 1919, are now canceled and void, in accordance with their terms and notice given. Kindly see that the canceled policies are returned to us.

"Very truly yours,

"Bruce Dodson, Manager."

The foregoing communication was not received by plaintiff until October 17, 1918, the date upon which the loss occurred. On October 16th, after the receipt of the letter purporting to have been written on October 8th, the plaintiff's president phoned a message to its insurance agents in Sioux City, ordering insurance upon the ice plant to the amount of $24,000, and received answer that the policies therefor would be issued. At the same time, the agents, in accordance with the ·admitted custom or usual manner of transacting such business, issued so-called "binders" or "binding slips," by virtue of which plaintiff obtained temporary insurance for the amount named, to cover the period required for preparation of the policies. As the fire occurred on the following day, the policies thus ordered do not appear to have been delivered before the loss was suffered; but, so far as appears, none of said companies contested their liability to contribute to the indemnity. At the date of the loss, plaintiff held (including those issued by defendant) 13 policies or binders, issued by 12 different insurers, aggregating a total of $60,500 of insurance; or, excluding the defendant's policies, the undisputed insurance was $36,500. The value of the property immediately before the fire, as adjusted with the insurers other than the defendant, was $47,294.29, and the loss by the fire was $30,443.77. Within a very short time after the fire, representatives of the insurers, 11 in number, not including the defendant, met in Sioux City, and, after negotiating with plaintiff, and after having estimated the loss as above stated, undertook the preparation of a schedule of apportionment of such loss to the several companies. The defendant, insisting that its policies had been duly canceled before the fire, denied all liability for the loss, and took no part in the conferences or negotiations between the plaintiff and the other insurers. The first schedule prepared included the policies issued by defendant, estimating the contribution due from that company upon its two policies at $12,076.85. To this the plaintiff's president objected; because, in view of defendant's action in giving notice of a cancellation and denying all liability, plaintiff was uncertain as to its rights, and if it should finally be determined that defendant was not liable, the proposed schedule would throw upon plaintiff a loss in excess of its proper proportion as

a co-insurer. This question was finally settled between the conferees as follows: A schedule was made, apportioning the loss between the 11 insurers and plaintiff, as a co-insurer; and in consideration thereof, plaintiff executed a written agreement with each of said insurers, to the effect that, if the plaintiff should succeed in enforcing its claim against the defendant, it would pay to each of said insurers a sum representing the difference between the amount of the apportioned liability to such insurer without contribution by defendant, and the proper amount of such apportionment on the basis of the validity of the disputed policies. Under the adjustment thus made, the damage or loss sustained by the plaintiff was taken at $30,443.77, of which plaintiff, as a co-insurer, bore $4,105.01, while the other insurers (not including defendant) contributed $26,338.76. By an amendment to the petition, plaintiff sets out said adjustment, and alleges that it is suing in this case in the interest of its co-insurers, as well as in its own.

In pleading and in argument, the appellee not only rests its defense upon the right of cancellation reserved in the insurance contract, a right which it claims to have exercised, but insists also that, as the plaintiff had acted upon the notice of cancellation and at once procured other insurance upon the property, its action constitutes a waiver of its right to the contract or statutory period of five days, and a consent to immediate cancellation. It also pleads a tender made to the plaintiff one year after this action was begun, of the sum of $243.30 as the unearned premium upon the policies it claims to have canceled.

On hearing the evidence, the trial court made its findings of fact and conclusions of law in favor of defendant, making the result to turn upon the proposition that plaintiff obtained the new insurance on October 16, 1918, as a replacement for defendant's policies, and that by such action it waived the time it would otherwise have been entitled to, and consented to the immediate cancellation of the insurance.

As the action is at law, the findings of fact by the trial court, in so far as they have any substantial support in the evidence, are to be given the effect of a jury verdict. But like a jury verdict, such findings are not immune against review on

appeal, if it appear that they are without substantial support in testimony, nor does the rule exclude inquiry into the question whether, conceding the truth of a finding of fact, it justifies the conclusions of law drawn therefrom by the trial court. Bearing these propositions in mind, we come now to a consideration of the two phases of the defense which were held sufficient to defeat the plaintiff's action.

I. The issuance of the policies being admitted, and the loss occurring within the term covered by the contract, the burden of establishing an effective cancellation before the loss is upon the defendant. Except as such right is provided for by statute or reserved in the contract, neither the insurer nor the insured can declare or effect a cancellation without the consent of the other. Such right is quite generally provided for, upon prescribed terms and conditions, in practically all insurance contracts; but the rule is quite universal that such cancellation at the will or demand of one of the parties, without the consent of the other, can be effected only by a strict compliance with such terms and conditions. As said by Marshall, J., in *Davis Lbr. Co. v. Hartford F. Ins. Co.*, 95 Wis. 226:

"The right of cancellation does not exist at all, except by contract, and a clause in that regard is in the nature of a condition precedent, which must be strictly complied with in order to make an effort to cancel effective to accomplish its purpose."

See, also, *Van Valkenburgh v. Lenox F. Ins. Co.*, 51 N. Y. 465; *Quong tue Sing v. Anglo-Nev. Assur. Corp.*, 86 Cal. 566; *Bennett v. City Ins. Co.*, 115 Mass. 241; *German Union F. Ins. Co. v. Clarke*, 116 Md. 622; *Barbour v. St. Paul F. & M. Ins. Co.*, 101 Wash. 46 (171 Pac. 1030); *Bragg v. Royal Ins. Co.*, 115 Me. 196 (98 Atl. 632).

In the case before us, the contract provides in explicit terms for the manner in which the insurer can cancel the insurance and relieve itself from further liability under its policy, "by giving to the insured *five days' written* notice of cancellation with or without tender of the unused paid deposit, which unused paid deposit, if not tendered, shall when ascertained, be refunded on demand. *Notice of cancellation shall state that said unused paid deposit (if not tendered) will, when ascertained, be refunded on demand.*" (The italics are ours.) With-

out the notice thus prescribed, it was not within the power or right of defendant to cancel the policy, except by agreement with the insured. No such notice was given. The defendant's letters addressed to the plaintiff, threatening a cancellation, were not a notice, within the terms of the contract. That contract provided for cancellation only upon five days' notice, and admittedly it was not given. The so-called notice did not provide for five days' time, or any length of time whatever, and was not, in fact, given until within two days before the loss. Moreover, the cancellation clause of the policy stipulated that the notice, if given, should "state that the unused paid deposit, if not tendered, will, when ascertained, be refunded on demand." The so-called notice neither tendered a return of the unearned deposit or premium nor promised to refund it on demand. It follows of necessity, and as a matter of law, that there was no cancellation of the policy by virtue of the alleged notice.

II.   Indeed, while appellee does not expressly concede the insufficiency of the notice to effect a compulsory cancellation of the policies, we do not understand it to seriously contest the conclusion above stated, but rather, it places principal reliance upon the proposition that plaintiff waived defendant's compliance with the conditions of the contract, and consented to the immediate cancellation of the insurance. It may readily be conceded that, notwithstanding the conditions attached to the insurer's right to cancel, for the plaintiff's protection against sudden and arbitrary withdrawal of the insurance for which it had paid, it was still competent for the insured to waive the benefit of its contract and consent to an immediate cancellation of the policies; and a consent or agreement of that kind, once fairly made and acted upon, would, of course, effectually terminate all contract relations and liabilities between them, save, perhaps, the obligation of the insurer to return the unearned premium. Such agreement, consent, or waiver of a valuable right without any apparent consideration is not to be lightly inferred from circumstances equally consistent with the absence of such consent, but, if it is once fairly established, the insured is bound thereby. There is no evidence whatever of any express agreement or consent by plaintiff to waive the conditions attached to the

2. INSURANCE: cancellation: waiver of insufficient notice.

insurer's right to cancel his policies.   From the time of the receipt of defendant's letters, dated October 8th and October 15th, until after the loss occurred, there was no meeting of the parties or of their agents; and no communication of any kind, direct or indirect, passed between them until after the property had been destroyed by fire.   It is insisted by counsel for appellee, and was apparently so held by the trial court, that, plaintiff having, on receipt of the defendant's letter of October 8th (received October 16th), at once procured new insurance to a like amount, it follows, as a matter of law, that it thereby consented to the immediate cancellation of the policies in suit.   The language of the court, in its finding of fact and conclusion of law pertinent to the point thus made, is as follows:

"It appears to the court that there is only one question in the case, and that is whether or not, when this additional insurance was taken out, after the notice of cancellation had been received, whether or not this insurance was additional insurance, or whether it was taken out to replace or as a substitute for the insurance of the defendant company.   This is a question of fact, I think is determining in this case."

After an outline of the evidence, the court then adds:

"Now there is just the question of fact as to where the preponderance of evidence lies as to whether or not this was new and additional insurance, to replace the insurance issued by the defendant company. * * * It seems to me the preponderance of the evidence shows this insurance was taken out to replace or substitute the insurance of the defendant company, and there will be a judgment in favor of defendant."

In so far as said finding involves any material controverted allegation of fact, it may be accepted as conclusive upon this appeal, but with the conclusion of law which the court below and counsel for appellee in this court draw therefrom, we cannot concur.   To fairly estimate the effect of plaintiff's action in taking out new or other insurance, it is necessary for us to get a clear view of the situation in which plaintiff was placed. The policies in suit are not of the more familiar or ordinary kind. They not only contain no provision by which the property owner may not take out additional insurance without the company's consent, or by which the taking of additional insurance will work

a forfeiture of such policies, but, on the contrary, they are so drawn as to encourage the carrying of other insurance, and to that end the owner is made a co-insurer if he does not keep the total of his insurance up to "at least" 90 per cent of the value of the property. Had the defendant's threat of cancellation never been made, and plaintiff, on October 16, 1918, had concluded to and did take out new and additional insurance to the amount of $24,000, and a loss had occurred on the following day, as it did occur, it would in no manner have affected the liability of the defendant under its policies, except to reduce the proportion or share which it could be called upon to contribute to the indemnity. If this be so,—and it cannot well be disputed,—on what principle shall it be said that it was not within its rights when, threatened with a cancellation of the policies issued by defendant (a threat which plaintiff knew could be carried into effect on five days' notice, if the defendant should so elect), it proceeded promptly to protect itself against the effect of such action by taking out other insurance? Could it not, in perfect good faith, and within the scope of its legal rights, take out an equivalent amount or other amount of insurance in other companies, with the thought in mind that it could better afford to carry the increased insurance for a few days than to take any chance of a loss in the interval, against which it might not be fully protected?

The situation in which the plaintiff was placed is fairly illustrated in the testimony given by Mr. Hathaway, its president and manager. While some correspondence had taken place between the parties concerning the fire-extinguishing facilities with which the property was furnished, and plaintiff, as early as September 30th, had declined to make the requested changes, no further word had been received from the defendant until the afternoon of October 16th. The paper bore date of October 8th, and contained a peremptory notice of the "cancellation of the following policies [describing them by number] according to their terms and this notice." On receipt of this notice, Mr. Hathaway penciled a memorandum on its margin, of the names of the local insurance agents with whom he had dealings, and opposite their names the amounts of new insurance for which

he telephoned to the agents named. The aggregate of these sums was $24,000. Explaining this act, he says: .

"The occasion of making this memorandum was the receipt on the 16th of this notice dated October 8th; and I did not know where we stood on this insurance, and therefore called up the agents and placed some insurance with them. I was on the fence. I did not know what to think or do, the date of that being so far back from the time we received it. I did not take out the policies shown in the memorandum with intent to waive any time that I might have as to when the Reciprocal policies should terminate. I could not determine for myself whether the Reciprocal policies were still in force or not. * * * I never returned or attempted to return defendant's policies."

It will be remembered that, in writing to defendant on September 30th, Mr. Hathaway had declined to make any change in the ice plant, and added:

"If this does not meet your approval let us know so we can replace our insurance."

Referring to this fact in cross-examination, he says:

"I meant by that, to give us due time to cover the insurance in other companies. I intended the insurance company should notify me whether they would continue the policies, so if they told me they would not, I could replace the insurance elsewhere. It was my intention to replace it if they canceled the policies. Immediately after getting the letter October 16th, advising us the policies were canceled, we telephoned, and took more insurance in the same amount. I did not know where we were in regard to these policies, and therefore, as we were figuring on taking more insurance anyway, to make us up to 100 per cent, I telephoned friends in the insurance business, and took out the same amount."

His statement that plaintiff had been contemplating an increase of. its insurance is corroborated by two witnesses in the insurance business, who tell of prior conferences with Hathaway on the subject. If the situation was such that plaintiff could not, consistently with its insurance contract with defendant, acquire other valid insurance without releasing the defendant, then, of course, the taking out of the new policies after receiving the alleged notice of cancellation might, perhaps, tend to

show an acceptance of such cancellation, and waiver of objection to the sufficiency of the notice; but since it had the right to obtain other insurance without the consent of the defendant, there seems to be no ground for holding, as a conclusion of law, that such act evidences either a consent or. a waiver. Nor is there any apparent good reason for so holding, even if it be conceded that the new insurance was taken out to serve as a replacement or substitute for the insurance of which a cancellation was being threatened or attempted. That such is not the law, we think is quite demonstrable, both upon principle and precedent, as indicated by the authorities to which we shall refer. First, however, we note our own decisions, upon which appellee largely relies in support of the judgment below. They are: *Hopkins & Cochran v. Phoenix Ins. Co.*, 78 Iowa 344; *Warren v. Franklin F. Ins. Co.*, 161 Iowa 440; *Parsons & Arbaugh v. Northwestern Nat. Ins. Co.*, 135 Iowa 532. These cases are, in their essential facts, easily distinguishable from the instant case. In the *Hopkins* case, the plaintiff was held to be estopped to deny the sufficiency of the attempted cancellation of 'his policy because ''the evidence shows that the cancellation was recognized by both the agent of defendant and the assured, and neither party regarded the policy thereafter to be of force.''

''Surely,'' says the court, ''it would be most unequitable for the assured to so speak and act as to induce defendant's agent to believe that plaintiffs regarded the policy as canceled, and, thus leading them into a feeling of security, induce them not to make a formal tender of the unearned premium, and demand the policy, with proper writing of cancellation indorsed thereon. They are now estopped to set up the nonpayment of the unearned premium, after having induced the belief of defendant's agent that cancellation was recognized by them without such payment.''

By no amount of ingenuity can anything be found in the present record calling for an application of the principles of estoppel against the plaintiff. In the *Parsons* case, the insured had voluntarily · surrendered and returned his policy to the company and requested its cancellation, and of course it was held that he could not recover insurance under such circum-

stances. In the *Warren* case, the loss of the insured property was admitted, and the real contest was between two insurance companies, the Franklin Fire and the Pennsylvania Fire, as to which was liable therefor. The insured person, Warren, had experienced some trouble in maintaining insurance on his stock of merchandise, and employed or authorized one O'Hara to act for or protect him in that regard. A policy in a third company having been canceled, O'Hara procured a policy for Warren in the Pennsylvania Company. Shortly afterward, that company telegraphed its agent to cancel the insurance. Acting upon this, notice, O'Hara obtained a policy from the agent of the Franklin Company and mailed it to the insured; and while it was still in course of transmission to Warren, the loss occurred. The holding of the court was, in brief, that the delivery of the Franklin policy to O'Hara, the authorized agent of Warren, was, in legal effect, a delivery to Warren, and that the contract of insurance with that company was thereby made complete before the loss occurred. It was further held that, while Warren was not directly informed of the act of the Pennsylvania Company in ordering a cancellation of its policy, or of the re-insurance in the Franklin Company, yet the previous authority he had given O'Hara to reinsure in another company was, in legal effect, authority to waive the time condition; and that, upon the procuring of such reinsurance, the cancellation became effective. O'Hara was acting in the double capacity of agent for both Warren and the Pennsylvania Company, under circumstances where the service he performed for the one party was not inconsistent with his duties to the other. He did just what it was understood in advance that he would do: he accepted the cancellation for Warren as final, and at the same time protected Warren by procuring him other insurance. There is no suggestion that Warren's insurance in the Pennsylvania Company was of that exceptional class in which the insured is at liberty to take out additional insurance without consent of the first insurer, or that his contract with the Pennsylvania was of a nature which would enable him to insist on the coexisting validity of both contracts. On the contrary, while he brought suit against both companies, in order to avoid any appearance of waiving any legal rights he might have against either, he very

properly disclaimed any right to recover upon both. Here, however, in the absence of an effective cancellation of the policies in suit, there affirmatively appears to be no legal obstacle to the insistence by plaintiff upon the validity of all its policies, or the assertion of the right to compel contribution from all of its insurers.

Appellee's argument mistakenly interprets the case of *Scheel v. German-Am. Ins. Co.*, 228 Pa. 44 (76 Atl. 507), as holding that if, on insufficient notice of cancellation, the policyholder at once takes out other insurance as a substitute for the policy sought to be canceled, "then defendant is relieved of liability on its policy." We do not so read the decision. On the contrary, the cited case, which is a near parallel of our own, clearly and quite emphatically negatives that proposition. The material facts in that case are that the plaintiff held two policies of $2,500 each on certain property. On November 7, 1908, the defendant insurance company, which had issued one of these policies for $2,500, gave plaintiff written notice of its intention to cancel the policy, and that, at the end of five days, all liability of the company under said policy would cease. Immediately upon the giving of such notice, plaintiff took out other insurance in the Hartford Company for like amount, thereby increasing its insurance (if the policy in question be counted) to a total of $7,500. On November 11, 1908, there was a total destruction of the property by fire, the loss so sustained being $5,508.51. As in this case also, the Hartford company had issued its binder on November 10th for $2,500, and the plaintiff collected from it its pro rata share of the loss. The defendant company, refusing to contribute, was sued upon its policy, and the defense pleaded to the demand was practically identical with the main defense here relied upon. The answer or affidavit of defense alleged the giving of the notice of cancellation, and that, after the giving of such notice and before the loss, plaintiff took out the Hartford policy, "with the intent that it should be a substitute for the defendant's policy, and was not for the purpose of increasing his insurance beyond $5,000, and as a result of such action, defendant's policy thereby became canceled, and the risk at an end."

This is precisely the defense, the decisive character of which the appellee here affirms.   The court there says:

"The position of the defendant company, as stated in its brief, is that, when the plaintiff received notice of the intended cancellation of the policy, and promptly applied for and obtained a policy in the same amount in the Hartford Company, his purpose was not to increase his line of insurance from $5,000 to $7,500, but to accept the cancellation, waive the full time limit of five days, and substitute in place of the defendant's policy the Hartford Company's policy as a reinsurance; and that, when he subsequently collected from the Hartford Company its pro rata of the loss by fire, which occurred within the five days, he could not, while thus accepting and receiving the benefit of that policy, hold the defendant company, for whose policy the Hartford Company's policy was a substitute, also liable.   We think the affidavit of defense is insufficient, and that the court below erred in not entering judgment against the defendant.   A policy of fire insurance is a contract of indemnity, and unless it is canceled by mutual consent, or the policy provides that it may be terminated on the option of the parties, and is so terminated, it will continue in force for the term for which it was written.   If the right to terminate is reserved in the policy, the conditions upon which it is to be exercised must be strictly complied with; and if a certain number of days is required to intervene before the notice to cancel is to take effect, the policy will still be in force, and cancellation will not become effective until the expiration of the time named in the notice.   If the insurance company allege as a defense in an action on its policy that the assured has waived the five days' notice, or that he has replaced the policy by another policy, and thereby relieved the company from liability, it is incumbent upon the company to aver in its affidavit of defense and prove on the trial, not only that such was the intention of the assured, but that his intention was carried out with his consent and by his agreement with the company.   In other words, the mere procurement of another policy on the same property and for the same amount after the notice and within the five-day limit does not disclose an intention on the part of the assured to cancel the earlier policy or to relieve the company from liability thereon; and in order

that it may have such effect, the company must aver and prove that the assured consented and agreed to the cancellation and the substitution of the later for the earlier policy. The policy on which this suit was brought, as noted above, gave either party the right to cancel it on five days' notice. Such notice was given by the company, and it specifically declared 'that all liability of said insurance company under said policy will absolutely cease on the expiration of this notice unless surrender thereof to said company be sooner made.' The policy, therefore, remained in force until the expiration of the five days, unless it was sooner surrendered to the company. It is not averred in the affidavit that the policy was surrendered to the company within the five days, nor that the defendant had any knowledge, prior to the fire or to the expiration of the five days, that the plaintiff had procured insurance in the Hartford Company, nor that there was any written or oral agreement between the parties that the policy was or should be canceled, or the company was or should be relieved from liability thereunder nor that the company had any knowledge of the purpose or intention of the plaintiff, in procuring the Hartford policy, to cancel defendant's policy or to substitute the Hartford policy for it. There is no provision in the policy that it should be canceled if insurance for a like amount was taken out in another company, nor that such insurance should be a substitute for the defendant's policy, and relieve the defendant from liability thereon. The liability on the policy, therefore, continued until the expiration of the term for which it was written, unless the policy was canceled in pursuance of the five-days' written notice, or by the mutual consent of the parties. As the defense rests solely upon the allegation that the policy was canceled by the substitution of the Hartford Company policy for a like sum, the defendant must aver and show, not only that the assured intended to, but did, procure from the Hartford Company a policy, substitute it for the defendant's policy, and consent or agree that the substituted policy should take the place of the defendant's policy, and thereby relieve the defendant from liability on its policy. Conceding that it was the intention of the plaintiff to limit his insurance on the property to $5,000, and that he had so instructed his agent, the fact that the latter procured $2,500 in the Hart-

ford Company, which, in addition to the two other policies on the property, aggregating $5,000, carried the plaintiff beyond the limit of $5,000, did not cancel or avoid the defendant's policy. Before it could have that effect, the intention to substitute must become effective by the plaintiff's agreement with the defendant company.''

The length of the foregoing quotation would be quite unpardonable, were it not so directly in point, and the law applicable thereto so aptly and clearly stated.

The case of *Wicks Bros. v. Scottish U. & N. Ins. Co.*, 107 Wis. 606 (83 N. W. 781), though dissimilar in facts, involves principles applicable here. In that case, one McBean, agent for plaintiff, procured the issuance of a policy from the defendant, through the agency of the Rogers-Ruger Company. Shortly after the policy was issued, the defendant telegraphed to its agents to cancel the policy as undesirable, and this instruction was telephoned by the agents to Rogers-Ruger Company, who in turn wrote McBean of the demand for cancellation, and asked him to send them the policy, saying that they would try to get other insurance. McBean then sent them the policy, saying that, if insurance could not be procured, he did not think it right that the matter should be left in that way. The letter inclosing the policy was received by Rogers-Ruger Company, and on the same day the property was destroyed by fire. The defendant insisted that the act of McBean in returning the policy to the agents through whom it was procured was a waiver of time, and operated as a consent to immediate cancellation. The court refused to so hold, saying that the order of defendant to its agents to cancel the policy contained no suggestion of a cancellation in any other way or manner than was provided for in the contract, and that the act of McBean in returning the policy was entirely consistent with an expectation on his part that the cancellation would be made, if at all, in the regular way; and a judgment for the plaintiff was affirmed.

In *American F. Ins. Co. v. Brooks*, 83 Md. 22, the notice of cancellation was not received by the insured until one day before the loss, and it was held that receipt of such notice would not work a cancellation, but was ''nugatory and void.''

In *German Union F. Ins. Co. v. Clarke*, 116 Md. 622, this

ruling was followed, where but three days' instead of five days' notice was given. As to the effect of notice for less than the contract period of time, see cases in note to *German Union F. Ins. Co. v. Clarke*, 39 L. R. A. (N. S.) 829.

Fairly in point, too, is *Bradshaw Bros. v. Fire Ins. Co.*, 89 Minn. 334 (94 N. W. 866). There plaintiff, having notice or knowledge that the insurer contemplated a cancellation of his policy, placed it in the hands of Shove & Company, the agents through whom he procured it, and gave them authority to surrender it for cancellation, in case such surrender and cancellation should be demanded by defendant, pursuant to the terms of the policy. The defendant gave no written notice of cancellation for the time provided by the policy, but one of its agents orally asked Shove & Company if they would accept service of notice, which they promised to do; but such service or written acceptance was not procured. Ten days later, Shove & Company delivered the policy to the defendant, and collected the unearned premium. This premium they credited to plaintiff upon their books, but did not inform him what they had done with reference to the cancellation until after a fire occurred, destroying the insured property. As in this case, the suit on the policy was tried to the court without a jury, and judgment was rendered for defendant. On appeal, the judgment was reversed. Says the court:

"A policy of insurance can only be canceled by one of the parties thereto by a strict compliance with its terms as to cancellation, unless such compliance is waived by the other party. Now the plaintiff never agreed, or authorized its agents to agree for it, to accept a cancellation of the policy unless it was made pursuant to the terms of the policy."

Further reference to the authorities at this point is unnecessary. We hold to the rule which finds expression in the *Scheel* case, supra, and the many other cases of that general character, as being both reasonable and just, and in accordance with established principles of law. It appearing without substantial dispute that there was no cancellation of the policies pursuant to their terms, the burden was upon appellee to establish such alleged cancellation by agreement or consent of the parties. To effect such an agreement or consent, there must be shown a meet-

ing of the minds of the parties upon the proposition that the policies should be canceled without reference to the terms of the insurance contract. To quote from Marshall, J., in *Davis Lbr. Co. v. Hartford F. Ins. Co.*, supra, "to effect such cancellation, the minds of the parties must meet, the same as in respect to any other contract."

There is in this record no testimony, direct or indirect, that the cancellation of the policies, without observance of the conditions therein prescribed, was ever the subject of. any treaty or negotiation or understanding had between those parties. It is true that plaintiff knew that defendant was threatening to cancel, if certain changes in the ice plant were not made. It is true, also, that plaintiff had refused to accede to that demand, and had said to defendant, "if this does not meet your approval, let us know, so we can replace our insurance;" but by no reasonable construction or interpretation can this correspondence be distorted into an agreement or consent or request by plaintiff that the cancellation might be effected without conforming to the conditions which the contract placed upon the exercise of that right. Plaintiff knew, of course, that the right of cancellation was reserved in the policies, and that it was within the power of the defendant to exercise it at any time upon conforming to the conditions,—the service of a five days' notice in writing, which must also either tender a return of the unearned premium or expressly promise such return when the amount was ascertained. Upon the giving of such notice, it would become effective at the end of the stated period; but the protection afforded by the policies would continue in full force and effect until the last hour of the fifth day. This advantage plaintiff could, of course, forego, by express agreement or voluntary waiver, and accept as final a cancellation declared to take effect immediately, without written notice, without days of grace, and without return or promise to return the unearned premium; but to establish such extraordinary departure from the contract of insurance,—such unnecessary, not to say unreasonable and unbusinesslike, relinquishment of a valuable right, without consideration,—the agreement or waiver must have some substantial support in the record. This, as we have said, is wholly wanting. The plaintiff not only denies any purpose or intent to consent

to a cancellation not authorized by the contract, but its every action disclosed in the record or found as a fact by the trial court is perfectly consistent with the truth of such denial. The argument against this conclusion which appellee seeks to draw from the fact that, in making up the proofs of loss upon plaintiff's claim against the other eleven insurance companies, plaintiff, in stating the "total amount of all insurance upon the property destroyed," did not include the policies in suit, has little force. Each of the eleven insurers mentioned was represented in the settlement or adjustment made of the pro rata distribution of the losses. The plaintiff, by Mr. Hathaway, disclosed to them, and all of them, the fact that it held these policies, and the further fact that, on the day before the fire, defendant had given it notice of cancellation, and was refusing to acknowledge any liability for the loss which had been sustained; and it was made a matter of mutual agreement between them that he should include in his proofs to them only the undisputed and admittedly effective policies, and that, if he should thereafter succeed in recovering upon the policies issued by defendant, he would account to the eleven companies for their respective shares of the contribution so collected. We fail to see in what respect the omission of mention of these policies in the proofs of loss made to the other co-insurers serves to detract from the strength of the plaintiff's case.

III. If we correctly apprehend the position taken by appellee, it is further suggested that plaintiff has collected the full amount of its loss from the other insurers, and that, as it can have but one satisfaction for the loss sustained, a verdict and judgment in its favor would amount to a double recovery upon a single demand. The rule thus invoked has no application to the instant case. Under the contracts of insurance in force at the time of the fire, the several companies issuing the policies, together with plaintiff itself, assumed the relation of co-insurers, each being bound to share pro rata in any loss which might occur. The defendant having denied liability and having refused to contribute, the other companies apportioned the loss between themselves and the plaintiff, under an agreement by which plaintiff should undertake to enforce the claim for contribution from

3. INSURANCE: payment of loss: double recovery.

defendant, for the benefit of himself and his co-insurers, who had been charged with payment of the indemnity. For that purpose, this action was brought. If the defendant's policies were not canceled, it was legally liable for payment of its proportionate part of the loss. It refused such payment, and thereby increased the burden borne by its co-insurers. To the extent of such increase, the co-insurers are entitled to reimbursement. Such reimbursement is not a double satisfaction of the same demand. A judgment as demanded by plaintiff does no more than to effect a proportionate distribution of the loss among all those who insured against the loss.

IV. We do not discuss the questions raised as to whether payment or tender back of the unearned premium is, in this case, essential to an effective cancellation. Were it necessary to a decision of this appeal, it is very likely that, under the terms of the policy, it would not be held a fatal objection. But the policy does provide for what may be called a substitute for such payment or tender, in that, in express terms, it declares that "the notice shall state that said unused paid deposit (if not tendered) will, when ascertained, be refunded on demand." This statement is made an essential part of the notice, and in the absence of waiver or consent, a notice lacking such essential is wholly void.

Without further extending this opinion, perhaps already unduly prolonged, we hold that the trial court erred in ruling that the act of the plaintiff in taking out new insurance after receiving the defendant's notice, October 16, 1918, evidenced a waiver of the conditions upon which the reserved right of cancellation could be exercised, and further erred in holding that the taking of new insurance as a replacement or substitute for the insurance sought to be canceled by the defendant operated as a consent to immediate cancellation, without regard to the conditions of the insurance contract. For the reasons above stated, the judgment below is reversed, and cause remanded for judgment in harmony with this opinion.—*Reversed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.