IN RE ESTATE OF ANDREW FREDERICKSON.

ANNA HOLMES, Appellee, v. HOWARD E. KITTELL, Administrator, Appellant.

**EXECUTORS AND ADMINISTRATORS:** Claims—Family Services. In an action against an estate to recover for services, it is not necessarily reversible error, in defining the term ''family,'' to instruct that the relation existing between such persons must be of a *permanent* and domestic character.

**TRIAL:** Instructions—Waiver of Right to Specific Charge. Instructions correct as far as they go are sufficient, in the absence of a request for more elaboration.

**EVIDENCE:** Burden of Proof. In an action against an estate to recover for services rendered, the burden rests on contestant to prove that the services were gratuitous.

*Appeal from Shelby District Court.*—EARL PETERS, Judge.

APRIL 6, 1921.

ACTION by claimant, appellee, to establish claim against the estate of Andrew Frederickson, deceased, for her services in the family of Frederickson, in caring for Frederickson and his wife, and performing household work. Trial to a jury. Verdict was rendered in favor of claimant. Defendant administrator appeals.—*Affirmed.*

*V. H. Byers,* for appellant.

*Edward S. White,* for appellee.

ARTHUR, J.—Claimant, appellee, is the daughter of decedent's wife, and stepdaughter of decedent, Frederickson. Decedent and claimant's mother were married more than 50 years ago, when claimant was a child 5 or 6 years old. Claimant remained in the home of her stepfather and her mother until she was 11 years old. She then went out of their home and forth to work. Occasionally she visited in her stepfather's home, but

never afterwards returned to them and made her home with them as a member of the family, unless, as contended by appellant, she became and was a member of the Frederickson family during the time for which she claims for services in this action.

Claimant was married when she was 19 years old, to a man by the name of Keldgord, with whom she lived for 12 or 13 years, and by whom she had 4 children. Following this period of 12 or 13 years, she lived and worked in Harlan, Iowa, and in Omaha, Nebraska, at which places she maintained a home for herself and her children. Following that, she lived alone for some time in Harlan in her own home, and in 1906, married Holmes, with whom she lived 3 or 4 years. After that, she worked in Omaha, and for a time in New York state, for a woman with whom she went from Omaha. She worked in families for various other persons, when she was not staying with her children, who had by that time grown up. Hers was a sort of roaming life. She seems to have had, after her marital relations ceased, employment of some kind, and occasionally spent some time with her children and other relatives and friends, but at no time returned to her stepfather's home, except for a brief visit.

About February 1, 1913, claimant went to the home of her parents, and remained there until March 20th of the same year, and then left there, being in Canada for a while, and then going to the home of her daughter in Omaha, where she remained for some time. From there she went to California, where she had a married son and another son and daughter, where she remained for some time. About the 1st of January, 1916, she returned to Harlan, Iowa. After remaining over night with her sister, she went into and stayed in the Frederickson home until March 20, 1916, which is the first period of time for which services are claimed in this action. She then went to Omaha, and lived with her son until late in the fall of 1916, returning to Harlan in January, 1917. She went to her sister's home, where the Frederickson old folks were living, and had been for a few weeks. After a few days, the old folks returned to their own home, claimant with them. This was about March 1, 1917, and marks the commencement of the last period for which claimant asks compensation.

Involved in this action, then, is the claim of Mrs. Anna Holmes for household services and care and nursing rendered to Andrew Frederickson and his wife for a period of 11 weeks, beginning January 1, 1916, and ending March 21, 1916, and such services for a period of 45½ weeks, beginning March 1, 1917, and ending January 19, 1918. Plaintiff's claim was based upon an implied contract -to pay for her services during the two periods above mentioned.

Appellant's resistance to the claim was: (1) That claimant, having no home of her own, and being the stepdaughter of deceased and the daughter of the wife of deceased, came to live in the home of her stepfather and her mother, without expectation of compensation, for the purpose of having a home for herself, and that such services as she performed, if any, were in consideration for having a home, and were gratuitous. (2) That the services performed by claimant, if any, were performed in the hope and expectation of a bequest from deceased in his will, and not with the expectation of compensation during the life of Frederickson. (3) That H. P. Dowling, as temporary guardian of deceased, sought a settlement with claimant for her work in the home of Frederickson, at the time she was leaving the Frederickson home in January, 1918; and that claimant told Dowling that nothing was due her; and that, shortly thereafter, she also stated to Howard E. Kittell, who had been appointed guardian to succeed Dowling, that she was not expecting anything and would not take anything; that, based on such statements of claimant to Dowling and Kittell, the services of claimant, if any rendered, were gratuitous.

Appellant assigns as error the overruling of his motion to direct a verdict in his favor at the close of plaintiff's testimony, and also assigns as error the overruling of his motion to direct a verdict in his favor at the close of all the testimony. The motions were based on substantially the same ground.

Appellant urged that, as a matter of law and conclusion of fact, claimant was a member of decedent's family. This was the major issue involved in the motions. An examination of the evidence is necessary, to pass upon these assignments. Appellant insists that it appears from claimant's own testimony that she was a member of decedent's family at the time she rendered

the services for which she claims, because it appeared that she was the stepdaughter of decedent, and the daughter of decedent's wife, and that, during her alleged service, she lived in the Frederickson home, and took part in the home, lodging and boarding there; and that, since she was a member of the family, it is presumed, as a matter of law, that such services as were performed by plaintiff, living in the home, were gratuitous, and without any expectation of compensation on her part, or expectation or implied promise to pay on the part of the decedent; that the burden of overcoming this legal presumption was upon the claimant; and that such presumption can only be overcome by a showing of an express contract, or facts and circumstances outside of and in addition to the mere performance of services, from which it can be inferred that there was an agreement and expectation on the part of decedent to pay, and on claimant's part to receive compensation.

Dowling and Kittell testified that, when they were acting as guardians of decedent, claimant told them that nothing was due her, and that she was expecting no compensation for her work. McNaughton testifies that, when he, as sheriff, was in the Frederickson home, serving notice of garnishment on Frederickson, under an execution against claimant, Frederickson and claimant both told him that nothing was owing from Frederickson to claimant. McNaughton also testified that claimant said she did not expect anything for her services.

Claimant testified that Kittell, when he was guardian of decedent, said something to her about pay, and she told him that, if there was anything left when the old folks got through, then it was time enough for her to get her pay. Complainant further testified, on cross-examination:

"While I was in the home of Andrew Frederickson in 1916, I asked him to pay me for my services. He never paid me."

Mrs. James Madison testified that Andrew Frederickson told her, some time in 1917: "I pay Christina (claimant) for her work."

It appears from the testimony of several witnesses, among them three doctors, who had occasion to be in the Frederickson home to doctor the old folks, that claimant did the housework and took care of the old folks.

Ida Rold testified that she saw Mrs. Holmes cooking the meals, setting the table, washing and combing her mother's hair, making the beds, changing the clothing of the old people, washing their bed linen, giving them baths, fixing food for her mother, cutting up her meat, arranging her chair at the table, helping her to the table, helping her away from the table, nursing both of them when they were in bed, giving them their medicine, heating irons, and preparing hot water bottles.

It appears, if not without dispute, conclusively, that claimant performed the household work while she was in the Frederickson home, and also acted as nurse for these two old people. There was no one else there doing work while she was there. Her stepfather was about 80 years old, and her mother about 90. Both of them were ill a great portion of the time.

As hereinbefore stated, plaintiff left the home of her stepfather and her mother when she was a mere child, and went out to work, and never came back into the family to live therein as a member of the family, unless it was at the time she was in the Frederickson home during the time she rendered the services claimed for in this action, at which time she had arrived at the age of about 58 years.

The question of whether claimant was a member of the Frederickson family at the time the services were rendered for which she claims, whether the services she rendered were gratuitous or not, or whether there was an implied contract for payment of such services or not, arising out of the facts, were all questions of fact for the jury to determine, and overruling defendant's motions was without error.

Counsel for appellant discusses exhaustively and ably questions of fact and law involved in the event, and on the theory that claimant was a member of the Frederickson family at the time she claims for services. But the manner of the submission of the case to the jury by the trial court renders it unnecessary to consider some of the propositions of law asserted by appellant.

The trial court held with appellant to the extent that the evidence presented by claimant, as a matter of law, did not entitle her to recover if it should be found that she was a member of the family of decedent at the times that she claims to have rendered the services for which she claims, and submitted

an interrogatory to the jury as to whether claimant was a member of such family or not, to which interrogatory the jury answered that claimant was not a member of the family.

The court instructed the jury that, if she was a member of the family, the evidence offered by her was not sufficient to entitle her to recover.

Appellant attacks the instruction defining "family," in submitting the question of whether claimant was a member of the family, wherein the court, among other statements, used this clause:

1. EXECUTORS AND ADMINISTRATORS: claims: family services.

"The relation existing between such persons must be of a permanent and domestic character, not abiding together temporarily."

Appellant complains that the word "permanent," as used in this instruction, in contradistinction from "temporary," tells the jury that, for the family relation to exist, the parties must be living together permanently,—that is, for all time; and that, later in the instruction, the jury was told that the relation need only be temporary, which is contradictory to the first test given. The court was unfortunate in the use of the word "permanent." But we think the use of the word in the connection in which it is used, did not convey the thought that a person, to be a member of a family, would have to enter the family and remain there while the family existed, but that the word was used to distinguish a situation where a person would drop into a family for a certain purpose, such as performing certain services, and not intending to become a part of that domestic institution. We think the jury could not have been misled by the instruction, and that it was correct and understandable.

Appellant also complains of the failure of the court to instruct the jury as to the burden of proof which he claims was on the claimant to prove that she was not a member of the family of decedent. The court gave the usual and

2. TRIAL: instructions: waiver of right to specific charge.

proper instruction in submitting the question, but nothing was said as to the burden of proof. Appellant asked no instructions relating to this subject, and therefore cannot complain. *Harvey v. City of Clarinda,* 111 Iowa 528.

Then we have this situation: The jury having found, by

answer to a special interrogatory, that claimant was not a member of the Frederickson family, under proper instructions submitting the question, then the pertinent further inquiries are whether plaintiff performed the services for which she claims, and the value of such services, and whether or not such services were gratuitous. Even then, plaintiff would not be entitled to recover if it appears, as appellant claims, that her services were gratuitous, and without expectation on her part that she was to receive pay therefor. The burden of showing that her services were to be gratuitous and without expectation of compensation was upon the contestants. Appellant insists that claimant's services were gratuitous because it appears from claimant's testimony that she expected to receive compensation for her services after the death of decedent, and also from claimant's statements made to Kittell, guardian, and Dowling, guardian.

3. EVIDENCE: burden of proof.

As against appellant's position, appellee's claim is that she did expect to receive compensation for her services. Claimant testified, on cross-examination:

"While I was in the home of Andrew Frederickson in 1916, I asked him to pay me for my services. He never paid me. That was in the house."

Mrs. James Madison, a witness for claimant, testified that Frederickson told her, "I pay Christina [claimant] for her work."

Appellant insists that, because claimant told the sheriff, when he was serving notice of garnishment on the old gentleman Frederickson, for the purpose of garnishing money that he might owe the claimant, that Frederickson did not owe her anything, and that she did not expect anything for her services while the old folks were living, and because of her statements to Kittell and Dowling, guardians, that her stepfather did not owe her anything, and that she would see what was left when the old folks got through with the property, before getting her pay, the claimant expected to be compensated, not by Frederickson in his lifetime, but by a bequest or gift in the will, and that the court was in error in not submitting to the jury the issue of whether or not claimant expected to be paid by bequest in the will. The evidence did not warrant submission of that issue,

and the court did not err in not submitting it. Claimant was not one of the heirs at law of Frederickson. She was only a stepdaughter. She received nothing by will. In fact, decedent left no valid will.

We think there was no error in submitting the question to the jury placing the burden on contestants to show whether or not the services rendered by claimant were gratuitously rendered, and without expectation on her part of receiving pay therefor. It was a question for the jury to determine, under all the evidence, taking into consideration what had been said by the decedent respecting compensation to claimant, and what was said by the claimant concerning compensation, in the light of its finding that claimant was not a member of the family, whether or not the services rendered by the claimant were gratuitous, and without expectation of receiving pay therefor.

It appears from the record, with little dispute, that this woman performed acceptable and necessary work in that family. It is not so clear how she came to appear in Harlan in 1916 and afterwards in 1917, and to enter into service in this family, but it does appear that she, or some other woman, was sorely needed in that household, to perform the general household work and act as nurse for these two old people. Her mother was 90 years old and her stepfather 80 years old. She had been away from them for about half a century, and appeared on the scene at a time when she became very useful. Whether Frederickson expected to pay her anything or not, she performed needed service for him. Both the old folks were ill and almost helpless, and were under the care anyway of three doctors, who testified in the case as to their condition. For aught that the record discloses, other relatives of the old folks were not giving up much of their time and attention in their behalf. It does not look reasonable that this woman, who had been away from her mother and stepfather for about 50 years, would now return to them in their advanced old age, and at a time when they were nearly helpless, and perform the arduous tasks of housemaid and nurse, merely for the purpose of affording herself lodging and board, and without expectation of receiving compensation therefor, when she could have lived with her children, as she had thereto-

fore done, or might have worked for other people for wages, as she had done most of the time during her widowhood.

We have not discussed each of the numerous assignments of error made by appellant, but we have considered each and all of them, and have carefully examined the record with reference thereto. We discover no reversible error in rulings or in instructions of the court, and the case is, therefore, affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.