Argued May 1, reversed and remanded June 6, petition for
rehearing denied September 27, 1950

# MEDFORD *v.* PACIFIC NATIONAL FIRE
# INSURANCE CO.

219 P. (2d) 142
222 P. (2d) 407

*Austin Dunn,* of Baker, argued the cause for appellant. On the brief were Dunn & Jackson, of Baker.

*David C. Silven,* of Baker, argued the cause for respondent. On the brief were Hallock, Donald, Banta & Silven, of Baker.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN and LATOURETTE, Justices.

BRAND, J.

On 20 May 1946 the defendant insurance company issued a policy insuring the plaintiff against loss or damage to his automobile caused by collision. The plaintiff sues on the policy and alleges that on 8 November 1946 when the policy was in full force and effect his car was totally wrecked in an accident; that its reasonable value was $2100; that $700 is a reasonable attorney fee; that all conditions precedent have been performed and that payment has been demanded and refused.

The defendant denies the allegations to which we have referred and alleges that the plaintiff has not filed any proof of loss. As a separate answer the defendant sets up certain provisions of the policy concerning cancelation and in apparent reliance upon those

provisions alleges that on 16 October 1946 written notice of cancelation was mailed to the plaintiff at his address as shown in the policy and that the letter containing said notice was not returned to the defendant. The defendant asserts that under the terms of the policy liability ceased at midnight on 23 October 1946. The provisions of the policy so far as material are set forth in the answer as follows:

"* * * This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and the hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing * * * If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective."

A copy of the alleged notice of cancelation is attached to the answer as an exhibit and reads as follows:

"NOTICE OF CANCELLATION
"Place: Portland, Oregon
"Date: October, 16th, 1946.

"You are hereby given notice of the cancellation of Policy No. PM 14207, issued through Walter J. Pearson agency, Paul Medford and loss payable to First National Bank, Baker, Oregon, Said Policy will stand cancelled, and all liability of Pacific National Fire Insurance Company and Massachusetts Bonding and Insurance Company, thereunder will cease, at and from midnight, standard time, October 23, 1946, without further notice.

"If the premium for said policy has been paid, the excess of said premium above the pro-rata premium for the expired time, if not tendered to you herein will be refunded on demand. If the premium has not been paid, no refund is due, and a bill for the premium earned to the time of cancellation will be forwarded in due course. Please return the policy.

"Pacific National Fire Insurance Company
"Massachusetts Bonding & Insurance Co.
"By ————

"Paul Medford
"General Delivery
"Baker Oregon
"Return premium, Collision $81.84"

To the separate answer, the plaintiff filed a demurrer which was sustained. The defendant elected to stand upon the answer. The cause was tried by the court without a jury. The plaintiff submitted findings of fact and conclusions of law. Objections were filed by the defendant and the court, having considered the objections, made findings of fact and conclusions of law and entered judgment for the plaintiff in the sum of $1915 with legal interest from 8 November 1946 and for the further sum of $500 attorney's fee and costs and disbursements. The defendant appeals.

The defendant, as its first assignment, asserts that:

"The Court erred in sustaining plaintiff's demurrer to defendant's separate answer and defense of cancellation of the policy under the terms thereof prior to the alleged loss."

The appellant states the issue thus:

"* * * The principal question on this appeal is whether in Oregon an insurance company can effectively cancel a policy by complying with the

cancellation clause provided in the policy or is 101-1609 O. C. L. A. the exclusive method to be employed.''

The plaintiff contends that ''The statutory method providing for cancellation of an insurance policy is exclusive'' and relies upon the provisions of O. C. L. A., § 101-1609 as the exclusive method by which the policy in question could be canceled. Plaintiff argues further that the notice of cancelation did not comply with the provisions of that section and therefore was ineffectual. We will first consider whether the statutes of this state have provided any exclusive method for canceling a policy of this kind. The statute provides that:

''A company may be licensed to make any or all insurance and reinsurance comprised in any one of the following numbered subdivisions:

''First: Fire and Marine Insurance; (a) On property and rents and use and occupancy, against loss or damage by fire * * * on automobiles against loss or damage from collision or theft, and against liability of the owner or user for injury to property caused by his automobile.'' O. C. L. A., § 101-117; Laws 1917, ch. 203, § 5, p. 312.

The statute further provides that:

''(1) When more than one class of insurance as enumerated and described in section 101-117 is effected by the same insurer each kind shall be written in a separate and distinct policy, which may be canceled, surrendered or otherwise terminated without affecting other premiums paid or policies held by the same assured, except as otherwise provided in this act.

''* * *

''(3) [Automobile insurance policies.] Insurance in one policy may be effected by any company licensed to transact such business, upon automobiles

and vehicles and the accessories and other property transported upon and used in connection therewith against loss or damage by fire, collision, explosion and against loss by legal liability for damage to persons and/or property resulting from the maintenance, use and operation of such automobiles or vehicles and against loss by burglary, embezzlement or theft, or any one or more of them, such insurance to be known as 'automobile insurance' and the premiums and losses to be reported under such title. For this purpose a fire insurance company need not use the standard fire policy." O. C. L. A., § 101-122.

O. C. L. A., § 101-131 provides in part:

"Every contract of insurance shall be construed according to the terms and conditions of the policy, except where the contract is made pursuant to a written application therefor, and such written application is intended to be made a part of the insurance contract  *  *  *".

O. C. L. A., § 101-1608 provides in part as follows:

"*  *  *  all insurance business transacted in whole or in part within or outside of this state, the subject matter of which insurance is located wholly or in part in this state, effected or placed by any company, unless otherwise provided, shall be subject to and governed by this act  *  *  *".

Then follows the provision of the statute on which the defendant relies as a statement of the exclusive method by which the policy in question could have been canceled.

"Any fire insurance policy may be canceled at any time by the insurer giving the insured or his representatives in charge of the property insured, and the mortgagee, if the insurance is for the benefit of the mortgagee, five days' notice of such cancelation, and if the premium has been actually paid, by

paying in cash or mailing by registered letter with proper postage affixed thereto, addressed to the insured at his usual or last known post-office address, a post-office or express company money order or bank draft, for the return premium computed at pro rata rate for the time the insurance has yet to run, or customary short rate where the insurance is canceled by the insured, or, where the premium has not been paid, by the insured giving the insurer or its agent or agency who issued the policy notice of such cancelation and paying the premium for the time the insurance has been in force, computed at the usual short rate." O. C. L. A., § 101-1609.

■ We may now call attention to certain provisions of the statutes thus far cited. A company issuing automobile insurance is deemed an insurance company under the provisions of O. C. L. A., § 101-117, and policies insuring automobiles against damage from collision are classified for the purpose of licensing, along with fire and marine insurance. O. C. L. A., § 101-117, par. (2). Automobile insurance policies, though classified with fire insurance policies, need not use the standard fire policy. Such insurance is known as "automobile insurance". O. C. L. A., § 101-122, par. (3). The crucial section. O. C. L. A., § 101-1609, does not provide that all policies issued by fire insurance companies may be canceled as therein provided. If that section did apply to all policies issued by a fire insurance company, then there would be ground for arguing that the section applied to automobile insurance when issued by a fire insurance company. The provisions of O. C. L. A., § 101-1609 are that "Any fire insurance policy may be canceled   *   *   *'', etc. The policy issued to the plaintiff was issued by a fire insurance company, but was not a fire insurance policy and was

a policy known as an "automobile insurance" policy, which, by express terms of the statute need not be in the form of a standard fire policy.

■ O. C. L. A., § 101-1801, et seq., specified the required provisions to which any fire insurance policy issued by a fire insurance company must conform. That act was repealed by Oregon Laws 1945, ch. 237, p. 352, and a new statute "To prescribe the form of fire insurance policies to be used by insurers in the state of Oregon" was enacted. That statute provides that:

"Section 1. From and after the effective date of this act no fire insurance company, corporation or association, their officers or agents, shall make, issue, use, or deliver for use, any fire insurance policy, or renewal of any fire policy on property in this state, other than as shall conform to the following conditions, which shall form a portion of the contract between such insurer and insured, and which shall read as follows:"

The procedure by which policies covered by the act shall be canceled is set forth in section 1 of that act. But, an automobile insurance policy, not being a fire insurance policy, and the company not being required to use the standard fire policy, is not governed by the provisions of the Standard Fire Insurance Policies act. We have been cited to no provision of the statute which purports to require any standard form in automobile insurance policies.

3. Condition No. 23 of the policy reads as follows:

"23. TERMS OF POLICY CONFORMED TO STATUTE: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes."

But we find no provision of the policy concerning the method of cancelation which is in conflict with any statute of Oregon. The provision is therefore inapplicable. The next question for decision under the first assignment of error is whether the plea of cancelation was demurrable when tested, not by the requirements of the statute, but by the provisions of the policy itself.

■ Cancelation is an affirmative defense to an action on the policy. *Van Scoy v. National Fire Insurance Co.*, 191 Iowa 318, 184 N. W. 306; *Artificial Ice Co. v. Reciprocal Exchange*, 192 Iowa, 1133, 184 N. W. 756; 46 C. J. S., Insurance, § 1294, pp. 344-5; 29 Am. Jur., Insurance, § 1433, p. 1074. To the plea of cancelation, a general demurrer was filed and sustained in the trial court. The defendant elected to stand on his answer without amending. Under these circumstances, it becomes our duty to apply the established rules of construction in determining the sufficiency of the answer.

■ Where a pleading states all of the material allegations requisite for a good cause of action or defense and is defective only by reason of the fact that it is vague or ambiguous or is wanting in that plainness and conciseness of statement required by the code, this court has held that the defect should be reached by motion to strike or to make more definite or certain rather than by demurrer. As said in *Clarkson v. Wong et al.*, 150 Or. 406, 42 P. 2d 763, 45 P. 2d 914:

"*   *   * A good cause of action may be defectively stated and be subject to a motion to make more definite and certain without being subject to demurrer.   *   *   *"

■■ If such a pleading is tested only by demurrer it will receive liberal construction. *Jackson v. Jackson,*

17 Or. 110, 19 P. 847; *Murray v. Lamb et al.,* 174 Or. 239, 148 P. 2d 797. Again, when the sufficiency of a pleading is drawn in question on the admission of evidence, no demurrer having been filed, or when the question is raised for the first time in the Supreme Court, the rule of liberal construction applies and all intendments come to the support of the pleading. But when, as in the case at bar, the sufficiency of a pleading is tested by demurrer, and the demurrer has been sustained and the party receiving the adverse decision elects to stand upon the pleading without amending, it must be presumed that the party has stated his case as strongly as the facts will permit and the pleading must therefore be construed most strongly against the pleader. *Walin et al. v. Young,* 181 Or. 185, 180 P. 2d 535; *Mattoon v. Cole,* 172 Or. 664, 143 P. 2d 679. The rule of strict construction is peculiarly applicable under the circumstances of this case. Except as the right to cancel an insurance contract is provided for by statute or reserved in the contract, neither party can effect a cancelation without the consent of the other. *Artificial Ice Co. v. Reciprocal Exchange,* supra; 29 Am. Jur., Insurance, § 273, p. 256. Provisions for cancelation contained in the policy will be enforced, but any reasonable doubt as to the meaning in an insurance policy must be resolved in favor of the insured. *Clark Motor Co. v. United Pacific Insurance Company,* 172 Or. 145, 139 P. 2d 570; *Purcell v. Washington Fidelity National Insurance Company,* 146 Or. 475, 30 P. 2d 742; *Stipcich v. Metropolitan Life Insurance Company,* 277 U. S. 311, 72 L. ed 895; 6 Berry, Automobiles, 7th Ed., § 6.464. Not only is reasonable doubt to be resolved in favor of the insured in determining the meaning of the policy; the courts have also established strict rules for the pro-

tection of the insured when the issue of cancelation is raised by the insurer. Although some authorities hold that substantial compliance with statutory provisions concerning the right of cancelation is sufficient (29 Am. Jur., Insurance, § 274, p. 256) nevertheless when a contractual nonstatutory provision for cancelation is contained within the policy itself:

> "* * * it is generally agreed that a strict compliance with the conditions of such a provision is a prerequisite to the assertion of a right thereunder, and that an insurance policy can be canceled by one of the parties thereto only by a strict compliance with the conditions of the policy permitting a cancelation, unless such compliance is waived by the other party of the contract." 29 Am. Jur., Insurance, § 275, p. 257. See also 6 Berry, Automobiles, 7th Ed., § 6.466.

Having in mind the foregoing rules concerning construction of the contract and strict compliance with its terms in the matter of cancelation, we turn to the allegations of the answer. The answer contains no allegation that the unearned premium has been paid or tendered to the insured. The plaintiff asserts that the payment or tender of the unearned premium is a condition precedent to effective cancelation, citing 32 C. J., Insurance, § 440, p. 1252; 6 Berry on Automobiles, 7th Ed., 1944 Supp., § 6.466; 29 Am. Jur., Insurance, § 290, p. 268; *Grant Lumber Co. v. North River Ins. Co.,* 253 F. 83; *Chadbourne v. German-American Ins. Co.,* 31 F. 533; *Taylor v. Ins. Co., of North America,* 25 Okla. 92, 105 P. 354; *Gosch v. Firemen's Ins. Co.,* 33 Pa. Super. Ct. 496; *Sanks v. St. Paul Fire & Marine Ins. Co.,* 131 Neb. 266, 267 N. W. 454. Reference is also made to the annotations in 127 A. L. R. at 1341. As pointed out by the annotator in the citation from A.

L. R., "the language of the particular provision involved with respect to such cancelation is of primary importance." In many instances the policy has provided for cancelation *upon notice to the insured and upon* refunding a ratable proportion of the premium. In such cases the courts have universally held that return or tender of the unearned premium is a condition precedent to cancelation by the insurer. See cases cited; 127 A. L. R. 1343.

A second group of policies employ the so-called standard cancelation clause which provides in substance that the insurer may cancel upon specified notice to the insured and that the unearned portion of the premium shall be returned to the insured upon surrender of the policy and that the insurer "shall retain only the pro rata premium". Many courts hold that such provisions are ambiguous and that they should therefore be construed in favor of the insured. These courts reach the conclusion that the payment or return of the unearned premium is a condition precedent to cancelation. On this point the authorities are in conflict and the decisions pro and con are collected in 127 A. L. R. 1347 to 1354. To this class belong the following cases cited by the plaintiff: *Grant Lumber Co. v. North River Ins. Co.*; *Taylor v. Ins. Co. of North America*; *Gosch v. Firemen's Ins. Co.*, all supra; *Bessette v. Fidelity & Casualty Co.*, 111 Conn. 549, 150 A. 706.

In a third type of policy provision is made for cancelation by the insurer by giving (usually) five days' written notice of cancelation "with or without tender of the excess of paid premiums above the pro rata premiums for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of can-

celation shall state that said excess premium (if not tendered) shall be refunded on demand". (127 A. L. R. 1354). Where the notice fails to state that the unearned premium will be refunded on demand the courts have applied the rule of strict compliance and have held the notice of cancelation insufficient. The following authorities cited by the plaintiff belong to this class: *Sanks v. St. Paul Fire & Marine Ins. Co.*, 131 Neb. 266, 267 N. W. 454; *B. & B. Trucking Co. v. Home Fire & Marine Ins. Co.*, 209 N. Y. S. 511; *Naify v. Pac. Ind. Co.*, 11 Cal. 2d 5, 76 P. 2d 663; *Molyneaux v. Royal Exchange Assurance*, 235 Mich. 678, 209 N. W. 803; *Pomerantz v. Mutual Fire Ins. Co.*, 279 Pa. 497, 124 A. 139; *Artificial Ice Co. v. Reciprocal Exchange*, supra.

The case at bar does not fall within any of the classes above designated, nor does either party cite any case which has arisen under a contractual cancelation clause such as the one involved here. Turning to the cancelation clause of the policy in the case at bar, which is set forth at the first of our opinion, we find that the language is clear and unequivocal. There is no room for construction and we cannot make a new contract for the parties. *Leslie v. Standard Accident Ins. Co.*, 327 Ill. App. 343, 64 N. E. 2d 391. In the absence of controlling statute or rule of public policy, parties may make such contract as they desire concerning the method of cancelation. 29 Am. Jur., Insurance, § 275, p. 257.

We come now to cases which are directly in point on the issue now under consideration and which were decided under policy provisions identical to those in the case at bar. In *Leslie v. Standard Accident Ins. Co.*, supra, a notice canceling an automobile liability policy was mailed on 23 July 1942 stating that cancelation

would become effective on 29 July 1942. The accident occurred in September. The insured received the notice but contended that the return of the unearned premium was a condition precedent to cancelation and that it had not been returned. The trial court rendered judgment for the plaintiff but upon appeal, judgment was reversed. The court said:

"* * * The pertinent language in the clause is the third sentence, 'The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.' To effect cancelation, nothing else need be done but the giving of this notice. By giving the notice, and upon passage of time, the end of the policy period occurs when the date and the hour stated in the notice is reached. An examination of the policy does not reveal any language therein contained which makes the return of the unearned premium a condition precedent to cancellation, but on the other hand, by its very terms, the cancellation clause provides that the return need not be made at the time the cancellation becomes effective. It would seem to us that the language of this clause makes the return of the unearned premium a consequence of cancellation, instead of a condition precedent to cancellation."

In *Parks v. Lumbermen's Mut. Casualty Co.*, 327 Ill. App. 356, 64 N. E. 2d 210, action was brought on a public liability and property damage insurance policy. The defendant company gave the plaintiff notice of cancelation on 24 June, effective 6 July, and the plaintiff had an accident on 9 July of 1943. At the time of the notice of cancelation there was due to the plaintiff $3.65 unearned premium. As in the case at bar the policy provided:

"* * * If the company cancels, earned

premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected, and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the named insured.''

This is the identical language found in the policy in the case at bar. The Illinois court held that the parties were free to contract, unrestricted by any statute of Illinois, so far as the return of the unearned premium was concerned. The court referred to many decisions on the ''standard cancellation clause'', citing 127 A. L. R. 1347. It held that the majority rule under the standard clause requires refund of the unearned premiums as a prerequisite to cancelation, citing cases. The court then said:

''We are not concerned here with a standard cancellation clause and those cases are not applicable in view of the contracting rights of the parties. * * *''

The court then reviewed numerous cases and said:

''Where the policy provides that the refund shall be made as a condition precedent to, or simultaneously with, cancellation there is no difficulty. The obligation of the insurer is clear. Where the policy is silent on the subject, Annes v. Carolan applies to require the refund prior to cancellation. Where there is an ambiguous provision with respect to the refund, it should be construed to require the refund prior to cancellation. The provision before us is not silent on the subject, nor is it ambiguous. It provides that the company *may* adjust the premium at the time of cancellation but *shall* as soon as practicable thereafter. It is not contended here that the refund was not made 'as soon as practi-

cable' after the cancellation notice. It is insisted that the cancellation was not effected because the refund was not made with notice of cancellation.

"The defendant had the privilege of adjusting the premium at the time cancellation was effected. It had the obligation, in the event it did not exercise the privilege, to do so as soon as practicable after the cancellation became effective. In view of these considerations, we believe the apparent ambiguity in the last sentence in the provision of the policy under consideration is dissipated. We think it means that the defendant in exercising the privilege or fulfilling the obligation, in making the premium adjustment, may mail or deliver its check in the same way that mailing or delivering of the notice of cancellation was made. The provision with respect to the notice of cancellation provided that delivery by either party should be equivalent to mail, and that mailing of notice should be sufficient proof of the notice. We believe, therefore, that the policy had been canceled prior to the accident and that defendant was not liable upon the policy."

In *Wallace v. State Farm Mut. Automobile Ins. Co.,* 187 Tenn. 692, 216 S. W. 2d 697, similar facts were before the court for consideration under a policy, the provisions of which concerning cancelation, were identical to those in the case at bar. The court cited with approval *Summers v. Travelers Ins. Co.,* 8 Cir., 109 F. 2d 845, 127 A. L. R. 1336, a case which on its facts is of the third type to which we previously referred. The court recognized the conflict of authority as to this type of case and then said:

"After years of experience and divergent constructions of the language of the old clauses the clause in the contract before us was born. It is essentially different, as noted by the underscored part of the quoted clause, so that the refund or

tender of the unearned premium is not essential to cancelation. The only cases we have found construing the present clause so hold."

The court then quoted with approval from *Parks v. Lumbermens Mutual Casualty Co.* and *Leslie v. Standard Accident Ins. Co.*, both supra. The court held that there is no ambiguity in the policy and that none can be created when none exists. It then said:

"In any way we look at the matter, the balance in the hands of the company after the cancelation, merely creates a debtor creditor relationship. The policy contract does not require of Wallace (the policy holder) that he make demand for this unearned premium. The company merely says it will either pay this 'at the time cancelation is effected' or it 'shall be made as soon as practicable' thereafter. This was merely a promise by the company that if the return premium did not come with the cancelation that it would be made with all promptitude considering the surrounding facts as to how long it would take to calculate this unearned premium. The language "as soon as practicable" means a reasonable time. Vanderbilt v. Indemnity Ins. Co. of North America, 265 App. Div. 495, 39 N. Y. S. 2d 808.

"* * *

"It seems to us that in the absence of any proof and evidence before the Court as to how much time would be 'practicable' in order to conform to the language of the cancelation clause, that we cannot assume judicially or judiciously that the refund of the premium was not done as soon as practicable after cancelation. We must conclude, in the absence of proof to the contrary, that the insurance company refunded the premium in the regular routine manner, and followed the course of established bookkeeping and accounting practices."

Judgment was rendered for the defendant.

The cancelation clause in *Summers v. Travelers Ins. Co.,* supra, contains some provisions which are very similar to those with which we are concerned in the case at bar, but the two provisions differ markedly in other respects. The provision of the Summers case was as follows:

"This policy may be cancelled by the Company by mailing written notice to the named insured at the address shown in this policy stating when, not less than five days thereafter, such cancellation shall be effective, and upon demand the Company shall refund the excess of premium paid by such insured above the pro rata premium for the expired term. The mailing of notice, as aforesaid, shall be sufficient proof of notice and the insurance under this policy, as aforesaid, shall end on the effective date and hour of cancellation stated in the notice."

The Court of Appeals in the Summers case gave careful consideration to the contention that the return of the unearned premium was a condition precedent to the right to cancel the policy. It found no Missouri statute applicable to the question and held that the parties were therefore at liberty to contract on the subject, and since there was no ambiguity, it was held that the contract must be given effect as written. We quote from the opinion as follows:

"The return of the unearned premium was not under this contract of insurance a condition precedent to the company's right to cancel. Webb v. Granite State Fire Ins. Co. 164 Mich 139, 129 NW 19; Phoenix Mutual Fire Ins. Co. v. Brecheisen, 50 Ohio St 542, 35 NE 53; Davidson v. German Ins. Co. 74 NJL 487, 65 A 996, 13 LRA (NS) 884, 12 Ann Cas 1065; Parsons v. Northwestern National Ins. Co. 133 Iowa 532, 110 NW 907; Mangrum v. Law Union Ins. Co. 172 Cal 497, 157 P 239, LRA1916F 440, Ann Cas 1917B 907; Smith Trav-

elers Ins. Co. 163 Misc 579, 296 NYS 365; Molyneaux v. Royal Exchange Assur. Co. 235 Mich 678, 209 NW 803; Hastalis v. Firemen's Ins. Co. 117 W Va 211, 185 SE 419; Schwarzschild & Sulzberger Co. v. Phoenix Ins. Co. 2 Cir, 83 F. (2d) 793. The giving of notice under the provisions of the policy terminates the insurance. The unearned premium is to be returned to the insured as a consequence of cancellation and not as a condition precedent to such cancellation."

■ If the decision in the Summers case, and in others like it, is correct, then a fortiori we must conclude that the return of the unearned premium was not a condition precedent to cancelation under the terms of the policy in the case at bar. The policy in the Summers case did not contain the provision found in the policy with which we are now concerned, which reads as follows: "Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective." To summarize; the policy in question may be canceled "by mailing * * * " to the insured, not "by giving notice" to him. Notice shall state when cancelation "shall be effective". Mailing is sufficient proof of notice. The date and hour stated in the notice is the end of the policy period. Premium adjustment may be made "after cancellation becomes effective". If return of the unearned premium may be made after cancelation becomes effective it cannot be a condition precedent to effective cancelation.

Plaintiff next contends that the answer is demurrable because of failure to allege that the notice of cancelation was actually received by the plaintiff. The plaintiff cites in support the following authorities: 29 Am. Jur., Insurance, § 285, p. 264; 14 A. L. R. 200;

35 A. L. R. 1472; 123 A. L. R. 1008; 32 C. J.; Insurance, § 436, p. 1248; *American Building Maintenance Co. v. Indemnity Ins. Co.,* 214 Cal. 608, 7 P. 2d 305; *Merrill v. Farmers' Alliance Ins. Co.,* 155 Kan. 31, 122 P. 2d 776. Reference to the authorities cited again discloses that no general rule can be laid down and that the language of the particular provision involved with respect to cancelation is of primary importance. Where the policy provides that it may be canceled by the company "on giving notice to that effect" (*Farnum v. Phoenix Ins. Co.,* 83 Cal, 246, 23 P. 869) or by "giving to the insured" five days' notice of written cancelation (*Hendricks v. Continental Ins. Co.,* 121 Pa Super. Ct. 390, 183 A. 363; *Potomac Ins. Co. v. Atwood,* 118 Ill. App. 349; *Hartford F. Ins. v. Tewes,* 132 Ill. App. 321; *American F. Ins. Co. v. Brooks,* 83 Md. 22, 43 A. 373; *Commercial Union F. Ins. Co. v. King,* 108 Ark, 130, 156 S. W. 445) the cancelation does not become effective until the notice is received, that is, until, as required by the policy, notice has been *given to* the insured. Again, in a number of cases, the attempted cancelation has been ineffective when, without any provision of the policy authorizing it, the insurer has sent the notice of cancelation in an envelope marked "After 5 days return", etc., or when the notice is sent by registered mail in an envelope on which was printed "Personal receipt of addressee required". Under such circumstances, if the letter is returned to the sender without delivery to the insured, the cancelation has been held ineffective under a policy providing for cancelation by giving to the insured five days' notice of cancelation with the added provision that notice of written cancelation mailed to the address of the insured stated in the policy shall be a sufficient notice. *American Automo-*

*bile Ins. Co. v. Watts,* 12 Ala. App. 518, 67 S. 758, 67 S. 1017; *Irish v. Monitor Ins. Co.,* 264 Mich. 586, 250 N. W. 318. In a case of this kind, however, a New York court said:

> "Plaintiff claims that the mode of mailing the notice was insufficient in that the postal carrier was obliged to return the original notice to defendant for failure to obtain the personal signature of the plaintiff to whom the notice was addressed. It would appear to me that but for the printed notice, viz., personal receipt of addressee required printed on the face of the envelope addressed to the plaintiff, defendant would be entitled to judgment. It does indeed seem, however, that the notice of cancelation did not permit or authorize the mailing of an envelope to the plaintiff bearing the written notice in question. Such written notice simply meant that if the addressee was not present at the time the postman called, the envelope containing the notice of cancelation could not be left at plaintiff's address. In this particular case it is apparent that there exists no presumption of actual receipt of the notice of cancelation by reason of the mailing of the letter in the manner above described. If the letter had been left at the plaintiff's address the same might have been called for by the plaintiff at some time or the letter might have been forwarded to him wherever he might reside. In other words, the written notice in question appearing on the envelope provided for a delivery of the letter only in case the addressee was found to personally receipt for the same. I am of the opinion therefore that the notice of cancelation was not mailed in the manner required by the cancelation clause of the policy." *Kamille v. Home F. & M. Ins. Co.,* 129 Misc. 536, 221 N. Y. S. 38.

And in *Werner v. Commonwealth Casualty Co.,* 9 N. J. Misc. R. 963, 156 A. 116, affirmed 109 N. J. L. 119, 160 A. 547, the court held that since there was no pro-

vision in the policy for sending a cancelation notice by registered mail, the insurer, by sending by registered mail and requesting a personal receipt, assumed the responsibility of personal delivery to the insured.

In *American Automobile Ins. Co. v. Watts,* supra, the policy provided that: "notice of cancellation deposited in the United States mail, postage prepaid, to the address of the assured, as stated herein, shall be sufficient notice." This case is quoted at length in 6 Berry Law of Automobiles, § 6.466, p. 544. The court said:

" * * * The insured, by assenting to the stipulation in question, agreed to take such chance of his actually getting a notice of cancellation and a check for the return premium as was involved in the deposit of them in the mail, postage prepaid, to his stated address; but it is not to be supposed that it was in the contemplation of either of the parties to the contract that the insurer was to be at liberty to reduce this chance to a minimum by requesting the return of the letter if it should not be delivered within a very brief period after it reached the place to which it was to be addressed, especially as, if there was any benefit to the insurer in its getting back into its possession the undelivered notice of cancellation and its unused check, it was a benefit to which the contract did not entitle it, while, by its bringing about that result in that way, the purpose of the stipulation so far as the insured was concerned would be wholly defeated."

In *Trinity Universal Insurance Co. v. Willrich,* 13 Wn. 2d 263, 124 P. 2d 950, the clause provided for cancelation by mailing written notice to the insured and provided further:

" * * * The mailing of notice as aforesaid shall be sufficient proof of notice and the insurance under this policy as aforesaid shall end on the effective date and hour of cancellation stated in the notice."

The notice was mailed, but the trial court found that it was never received. The court said:

"There is no statute in this state which prescribes, limits, or restricts the manner of giving notice of cancellation of casualty insurance policies of the kind with which we are here concerned, and we are aware of no reason prompted by public policy which would prevent persons from voluntarily entering into a contract containing conditions such as those set forth in the cancellation clause of the policy here in question.

"While we have no decision in this state directly upon the question here presented, the more recent, and we think the better reasoned, cases from other jurisdictions sustain the validity of such cancellation clauses and hold that the mailing of written notice, in accordance with the provisions of such a clause, is sufficient, whether or not such notice is actually received by the insured."

The opinion cites many cases in support. The court observed that:

" * * * Much of the apparent conflict, however, may be ascribed to the variation in the facts of the cases and to the difference in the provisions of the policies or governing statutes involved therein. * * * "

To the same effect see *Gendron v. Calvert Fire Insurance Co.*, 47 N. M. 348, 143 P. 2d 462; *Seaboard Mutual Casualty Co. v. Profit*, 108 F. 2d 597; *Boyle v. Inter Ins. Exchange of the Chicago Motor Club*, 335 Ill. App. 386, 82 N. E. 2d 179; *Raiken v. Commercial Casualty Ins. Co.*, (N. J. Sup.) 135 A. 479; *California-Western States Life Ins. Co. v. Williams*, Tex. Civ. App., 120 S. W. 2d 844; *Byard v. Royal Indemnity Co.*, 49 N. Y. S. 2d 60; *Naify v. Pacific Indemnity Co.*, supra, (dictum); see also *Cuttle v. Concordia Mut. Fire Ins. Co.*, 290

Mich. 117, 287 N. W. 401. *American Building Mainte-nance Co. v. Indemnity Ins. Co.*, 214 Cal. 608, 7 P. 2d 305, cited by the plaintiff is against his contention. In *Merrill v. Farmers' Alliance Ins. Co.*, 155 Kan. 31, 122 P. 2d 776, cited by the plaintiff, the policy provided:

> "This company reserves the right to cancel this policy, or any part thereof, by giving five days notice to that effect to the insured, and if the premium has been paid, making a tender of the unearned premium such notice of cancellation and tender of unearned premium to be made in person or by mail addressed to the insured's post office address".

The jury made a special finding to the effect that the defendant company never mailed the notice of cancelation. The court, however, discussed the rule and emphasized the provision requiring the giving of notice "to the insured" and held that since the insured never received the notice "if it was in fact mailed", the cancelation would be ineffective. The statement is dictum.

■ It will be observed that the older forms of policy require *notice to the insured* whereas that phrase does not appear in the policy with which we are now concerned. The provision here is that the policy may be canceled by mailing to the insured at the address shown in the policy a written notice. Again, instead of the earlier type of provision which makes mailing the equivalent of personal delivery, this policy, by its terms, makes clear that the mailing is the cancelation and provides that delivery shall be equivalent to mailing. Finally it is provided that the mailing of notice as aforesaid, shall be sufficient proof of notice. We hold that the defendant's answer was not demurrable by reason of the omission therefrom of an allegation that the mailed notice was also actually received.

■ ■ The next contention of the plaintiff is that there was no valid cancelation of the policy because of a discrepancy between the provision of the policy and the letter canceling. The policy provides that if premium adjustment is not made at the time cancelation is effected it "shall be made as soon as practicable after cancelation becomes effective." The notice, which was mailed, states that the excess. of premium (which was not tendered with the notice) "will be refunded on demand". If the policy had required the notice to affirmatively state that the unearned premium would be returned as soon as practicable, and if instead of so stating, the defendant had stated that payment will be refunded on demand, there would be a basis of precedent for holding that the notice of cancelation was insufficient since it did not comply with the requirements of the policy. Plaintiff could then claim support from such cases as *Sanks v. St. Paul Fire & Marine Ins. Co.; B. & B. Trucking Co. v. Home Fire & Marine Ins. Co.; Naify v. Pacific Indemnity Co.; Molyneaux v. Royal Exchange Assurance; Pomerantz v. Mutual Fire Ins. Co.; Artificial Ice Co. v. Reciprocal Exchange;* all supra. These cases hold that when the policy requires that a notice shall state certain facts, a failure so to state is fatal. But, in the case at bar, the only provision specifying what the notice shall state is that it be one "stating when not less than five days thereafter such cancelation shall be effective." The notice as mailed strictly complied with this requirement. It stated "Said policy will stand canceled, and all liability * * * thereunder will cease, at and from midnight, standard time, October 23, 1946, without further notice." Any further question as to the sufficiency of the notice of cancelation is, in our opinion, foreclosed

by the decisions previously cited, being the only ones which pass upon provisions identical to those in this policy. If those cases are sound, and we think they are, then the giving of the required notice, plus the expiration of the time specified, results ipso facto in cancelation. The return of the premium would be a consequence of cancelation instead of a condition precedent, as said in *Leslies v. Standard Accident Ins. Co.*, supra. The balance in the hands of the company after the cancelation would merely create a debtor creditor relationship, as said by the Tennessee court in *Wallace v. State Farm Mut. Automobile Ins. Co.*, supra. The discrepancy between the policy provision that refund of the debt "shall be made as soon as practicable" (which was not required to be stated in the notice) and the notice to the effect that the debt "will be refunded on demand" becomes immaterial for the discrepancy relates to matters subsequent to the effective cancelation. If it be suggested that by demanding the unearned premium or by complying with the request for return of the policy, the plaintiff might be thought to waive some rights, the answer is, that if the policy had been already canceled through the definite exercise by the defendant of a clear right so to do, the plaintiff could have no right of recovery under the policy for any loss suffered subsequent to the cancelation, and therefore could waive none. His right to the unearned premium would alone exist, and this certainly would not be waived by demanding it or by returning the policy. Since the notice of cancelation was given exactly as required by the policy, we hold that it was sufficient.

This case went to trial on the complaint and the denials and allegations of the first answer, but the issue of cancelation raised by the further and separate an-

swer was not tried. The defendant made an offer of proof in support of his defense of cancelation, but the offer was rejected. Under a new trial the defendant will have the right to submit evidence supporting this issue and the plaintiff will be entitled to introduce evidence tending to contradict the allegations of the further affirmative defense.

Since the case may be retried, we will briefly notice the other assignments of error. The defendant asserts that the court erred in denying defendant's motion for nonsuit. The policy provides that it does not apply under coverages "D", "E", "F", "G", and "H" for damage by collision, fire, theft, etc., "while the automobile is subject to any * * * mortgage * * * not specifically declared and described in this policy". The policy recites that there is an encumbrance of $1038 and that loss is payable to the insured and the First National Bank, Baker, Oregon. There was no other encumbrance at the time of the execution of the policy. The plaintiff paid off the mortgage to the bank on 9 September 1946 but a few days later borrowed $200 or $250 from a third party. In view of the phraseology of the policy we hold that there was no warranty or agreement against encumbrances created after the execution of the policy. Such encumbrances obviously could not be described in "this policy". The words used are open to such construction, and applying the authorities earlier quoted, we hold that the policy should be construed favorably to the insured if there be any ambuiguity. If the company intended to cover future mortgages it could have said so. *Collins v. Merchants & Bankers Mut. Ins. Co.*, 95 Iowa 540, 64 N. W. 602; 4 Couch, Insurance, § 901, p. 3123; 27 Am. Jur., Insurance, § 624, p. 502. See also *Kautz v. Zurich General*

*Accident and Liability Ins. Co.,* 212 Cal. 576, 300 P. 34; *Kister v. Lebanon Mutual Ins. Co.,* 128 Pa. 553, 18 A. 447; *Gould v. Dwelling-House Ins. Co.,* 134 Pa. 570, 19 A. 793; *Koshland v. Home Ins. Co.,* 31 Or. 321, 49 P. 864; *Russell v. The Cedar Rapids Ins. Co.,* 71 Iowa 69, 32 N. W. 95.

By his third and last assignment the defendant asserts that the court erred in rejecting the offer of defendant to show that no proof of loss had been filed. There is no merit to this assignment. The position of defendant is, that it canceled the policy on 16 October. The evidence was that on the day after the accident the plaintiff was informed by the defendant's agent that the policy had been canceled. This amounted to a denial of liability which constituted a waiver of any proof of loss. *Meader v. Farmers' Mut. Fire Relief Association,* 137 Or. 111, 1 P. 2d 138; *Ringo v. Automobile Insurance Co.,* 143 Or. 420, 22 P. 2d 887.

The judgment for plaintiff is reversed and the cause remanded for a new trial.

ON PETITION FOR REHEARING

*Hallock, Donald, Banta & Silven,* of Baker, for the petition.

*Dunn & Jackson,* of Baker, contra.

Before LUSK, Chief Justice, and BRAND, BELT*, ROSSMAN and LATOURETTE, Justices.

Petition denied.

BRAND, J.

In our former opinion we held that the provisions of O. C. L. A., § 101-1609 did not control the method by which the policy on the plaintiff's automobile might

---

* Died August 6, 1950.

be canceled by the company. We further held that the provisions of the policy itself controlled the method by which it might be canceled. By a petition for rehearing the plaintiff contends that we erred in so holding and again urges that compliance with the provisions of O. C. L. A., § 101-1609 constituted the only method by which the automobile insurance policy in question could be canceled.

In the year 1907 the legislature passed an act "to provide for a uniform contract or policy of fire insurance * * *." Laws 1907, Ch. 137. That act specifically set forth the provisions which shall be incorporated into the policy, and among other such provisions, there was one which specified the method by which any "fire insurance policy" or renewal of any "fire policy" might be canceled. The act was limited to policies insuring against loss by fire and contained no reference to policies insuring against damage to automobiles unless that damage was the result of fire. The act was amended by the Laws of 1911, Chapter 175. The 1911 act made only a minor change in the required standard form for cancelation. The 1911 statute was not expressly repealed until the enactment of Chapter 237, Laws of 1945. In 1917 a comprehensive statute, known as the "Insurance Law" was enacted, which provided that:

"A company may be licensed to make any or all insurance and reinsurance comprised in any one of the following numbered subdivisions:

"First. Fire and Marine Insurance. (a) On property and rents and use and occupancy, against loss or damage by fire, lightning, tempest, flood, earthquake, hail, frost, snow, explosion (other than explosion of steam boilers or breakage of flywheels), leakage of sprinklers or other apparatus erected for extinguishing fires, and on such apparatus

against accidental injury; on automobiles against loss or damage from collision or theft, and against liability of the owner or user for injury to property caused by his automobile." Laws 1917, Ch. 203, Sec. 5, (2), p. 326; O. C. L. A., § 101-117.

The same chapter of the 1917 Laws indicates that the legislature contemplated that "automobile insurance" would be issued by fire insurance companies, for it is provided "For this purpose a fire insurance company need not use the standard fire policy." Laws 1917, Ch. 203, Sec. 5-e (3). The same provision appears in Laws 1927, Ch. 93, Sec. 1, which was amendatory of the 1917 act and which now appears as O. C. L. A., § 101-122. In the same statute, and under the heading "GENERAL PROVISIONS RELATING TO ALL FIRE INSURANCE COMPANIES", the following provision was enacted:

"On and after January 1, 1918, no fire insurance company shall issue any fire insurance policy covering on property or interest therein in the State other than on form known as the 'Standard' as now or may be hereafter constituted." Laws 1917, Ch. 203, Sec. 22-h, (1).

The provision concerning the "form known as the 'Standard' " must apply to the 1911 statute, supra, which provided for standard forms of fire insurance policies. Section 22-i of the 1917 act contains the provision which became O. C. L. A., § 101-1609 on which the plaintiff relies. It will be observed that O. C. L. A., § 101-1609 (Laws 1917, Sec. 22-i) provides the manner by which "any fire insurance policy" may be canceled. That act went into effect on *21 May 1917,* but 22-h of Chapter 203 of the 1917 Laws, quoted supra, provides that all fire insurance companies issuing fire insurance policies *after 1 January 1918* must employ the standard

form which was then provided by the 1911 act. We conclude that any fire insurance policy which was issued after 1 January 1918 was controlled by the cancelation provisions in the standard form, and not by the provisions of O. C. L. A., § 101-1609 which were in effect only as to cancelations which occurred prior to 1 January 1918. Since the plaintiff's policy was issued after 1 January 1918, it follows that O. C. L. A., § 101-1609 never applied to it, whatever the meaning of the words "fire insurance policy" may be.

■ Chapter 237 of the Laws of 1945 amends the standard form statute and provides that no fire insurance company shall issue "any fire insurance policy" except in conformance with the mandatory provisions of the act. The requisite steps for cancelation under the 1945 act are materially different from, and inconsistent with, the provisions of O. C. L. A., § 101-1609. We know that the 1945 act does not apply to automobile insurance because it is expressly provided by O. C. L. A., § 101-122, Par. 3, that insurance known as automobile insurance need not use the standard fire policy. O. C. L. A., § 101-1609 provides that "Any fire insurance policy may be canceled". The 1945 statute, providing the standard form, also employs the term "Any fire insurance policy". We think that the words were used in the same sense in both statutes and that in neither case were they intended to include automobile insurance policies insuring against collision. We therefore find no statute which defines the method by which an automobile policy insuring against collision, or any other loss, other than that caused by fire, shall be canceled by the insurer, and we conclude that the method specified in the policy controls. Even in the absence of the express provision that automobile insurance

covering fire, collision and liability for damage shall be known as automobile insurance, we find it difficult to believe that the usual automobile insurance policy such as is involved in the pending case would ever be referred to as a fire insurance policy. The licensing statute, O. C. L. A., § 101-117, groups for the purposes of licensing, not only fire insurance and automobile insurance, but also insurance against flood, snow and the like. We think no one would designate a policy insuring against flood as a fire insurance policy. The foregoing considerations sustain the views which we expressed in our first opinion.

Counsel cites the following cases in support of the proposition that section 101-1609, O. C. L. A., is the exclusive method by which the policy in question could be canceled: *Walker v. Fireman's Fund Insurance Company*, 114 Or. 545, 234 P. 542; *Williams v. Pacific States Fire Insurance Company*, 120 Or. 1, 251 P. 258; *Commercial Securities, Inc. v. Hall*, 140 Or. 644, 15 P. 2d 483. Support from the cited cases is claimed by reason of language in each of them which asserts, or implies, that a policy of insurance on automobiles was a fire insurance policy. In the Walker case the court referred to a standard policy "used in other kinds of fire insurance". In the Williams case the court said, "This is an action on a fire insurance policy", and in the Commercial Securities case the court referred to the policy as an "automobile insurance policy", but it also said that the policy "is not a standard fire policy". In each of the three cases, automobiles were specifically insured against fire, and were consumed by fire. The fact that the court referred expressly, or by implication, to the policies as fire insurance policies, is without any significance in the case at bar. The petition for rehearing is denied.